Barton, *et al.*, Executors, *vs.* Barton.

(Decided 4th March, 1870.)

WILLIAM E. BARTON AND JAMES H. BARTON, Executors of WILLIAM A. BARTON, *vs.* CAROLINE BARTON.

*Right of a Widow to maintain an Action at Law against the Executors of her Husband.*

Under the Code, a widow may maintain an action at law, against the executors of her deceased husband, for money which she loaned to him before marriage, and also for the recovery of the value of securities belonging to her, as of her sole and separate estate, and which she loaned to him during marriage, upon his express promise to repay the amount thereof to her.

APPEAL from the Circuit Court for Talbot County.

This was an action of *assumpsit*, brought originally in the Circuit Court for Caroline county, by the appellee, for the recovery of a sum of money loaned by her to her husband, the testator of the appellants. Upon the suggestion of the defendants, the record was transmitted to the Circuit Court for Talbot county.

The declaration was for the ordinary money counts, to which *non-assumpsit* and the two following special pleas

were pleaded, to wit: "That at the time when the said supposed indebtedness in the said declaration mentioned, accrued, the said plaintiff was *covert* of the said William A. Barton, deceased, and continued to be the wife of the said Barton until his death."

"That at the time when the said supposed promises in the said declaration mentioned were made, the said plaintiff was *covert* of the said William A. Barton, and continued to be the wife of the said Barton until his death."

On the pleas of *non-assumpsit* issues were joined, and to the two special pleas a demurrer was filed and ruled good by the Court.

Subsequently the plaintiff obtained leave to amend her *nar.*, and pursuant thereto, filed an amended declaration, which, beside the ordinary money counts, contained the following special count:

That the defendants' testator, in his lifetime, on the — day of August, 1860, agreed with the plaintiff to borrow of her the sum of $2,962.93, and in consideration that the plaintiff would loan to him the said sum of money, the defendants' testator promised and agreed with the plaintiff to pay to her the same, whenever after he should be thereto requested. And the plaintiff says that in consideration of the said promise and agreement so made by the defendants' testator, in his lifetime, she did agree to loan, and did loan to him the aforesaid sum of money.

To this declaration the defendants pleaded *non-assumpsit*, and issues were joined thereon.

At the trial the plaintiff introduced evidence to show that after her marriage with the defendants' testator, William A. Barton, which took place in July, 1861, she agreed to loan, and did loan to him sundry notes, and a judgment contained and particularly described in a written memorandum in the handwriting of the said William A. Barton, which were held and owned by her previous to their marriage, which notes and judgment he took into his possession and appropriated to

his own use, having agreed and promised, at the time they were so loaned and delivered to him by the plaintiff, to repay the amount thereof to her.

Among the *choses in action* described in said written memorandum, was a note of the said William A. Barton, dated June 2d, 1859, for money borrowed from the plaintiff, prior to their marriage, amounting to the principal sum of $580.

The defendants offered in evidence the last will and testament of the said William A. Barton, and it being agreed by the counsel on each side that the devise and bequest therein to the plaintiff, were, in due form of law, renounced by her, the defendants offered the following prayers:

1st. If the jury find all the facts offered in evidence, the plaintiff is not entitled to recover in this form of action for any money which was loaned by the plaintiff to the deceased, William A. Barton, during the time the coverture existed between them.

2d. If the jury find all the facts offered in evidence, and find from the evidence that any sum of money was loaned by the plaintiff in the year 1860, to William A. Barton, deceased; and that after said loan, the said Barton and the plaintiff were married, and continued to be husband and wife up to the time of the death of the said Barton, then the plaintiff is not entitled, in this form of action, to recover for said loan so made before said marriage.

3d. If the jury find all the facts offered in evidence, and shall find that the notes and judgment referred to in the evidence as having been received into the possession of William A. Barton, were evidences of debts due the plaintiff before her intermarriage with the deceased, William A. Barton, that the plaintiff is not entitled to recover in this form of action for any money received during the coverture on said notes and judgment by Wm. A. Barton, deceased, although he may have promised during the coverture to pay the same to her.

4th. That the plaintiff is not entitled to recover in this form of action any interest upon the loan or other *choses in*

*action* offered in evidence, that may have accrued during the coverture or existence of the marriage between the plaintiff and the deceased, W. A. Barton.

The Court granted the fourth prayer, and rejected the others.

The defendants excepted to the rejection of their first, second and third prayers, and the plaintiff excepted to the granting of their fourth prayer. The verdict and judgment being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ALVEY, J.

*William S. Waters*, for the appellants.

At common law, no contract, cognizable in a Court of Law, can be entered into between husband and wife during coverture. The action of *assumpsit* is the proper action at law for recovery upon such a contract. It is the action resorted to in this case, and if such contract could be formed, it would be the proper remedy. This action is founded upon a *legal*, as contra-distinguished from an *equitable* contract. The contract may be express or implied. No contract can be made between husband and wife. They are incapable of contracting with each other in law. And no contract will be *implied* between parties incapable of forming an *express* contract. 2 *Story's Eq.*, secs. 1367, 1370; 2 *Kent's Comm.*, 129; *Story on Cont.*, sec. 11; *Church vs. Imperial G. L. Co.*, 6 *Ad. & El.*, 846.

The executors can be sued for such debts only as the deceased could be sued for. 2 *Wil. on Ex'rs*, 1756; *Com. Dig.*, *Pl.*, (2 *D.* 8;) *Went. on Ex'rs*, 206.

Does the 45th Art. of the Code modify the relations of husband and wife, so as to enable them to make a legal contract with each other?

The first and second sections of Art. 45 of the Code, provides that "the property, real and personal, belonging to a woman at the time of her marriage, and all property which

she may acquire or receive after marriage by purchase, gift, grant, devise, bequest or in course of distribution, shall—first, be protected from the debts of the husband, and not be any way liable for the payment thereof;" second, be held by the married woman " for her separate use," with power of devising the same as fully as if she were a *feme sole*, and she may convey the same by joint deed with her husband, provided that if she died intestate, the property shall pass, &c., (as the section directs.)

The third section provides that it shall not be necessary for a married woman to have a trustee to secure to her the sole and separate use of his property.

These provisions of the Code are not *all* new in Maryland legislation. The only new provision is that contained in the second section, and to this the Act of 1842, ch. 293, in regard to slaves and property made by the industry of the wife, bears a strong resemblance. The Act of 1853, ch. 245, resembles the first and third sections of this Article of the Code. The second section of the Act of 1853, provides that all the property of the wife shall be held " for her separate use," and the third section, that she shall hold it without the intervention of a trustee, that is to say, she has the *legal* title to her separate property.

At common law, the wife might hold property under and according to the terms of the instrument which conveyed it to her, and if the instrument appointed no trustee, the husband became trustee. She could only hold the equitable title. The Act of 1853, ch. 245, sec. 3, made it unnecessary to consider her husband a trustee for her, unless the instrument creating the trust, appointed a trustee. She held, by this Statute, the legal title. The Code declares that all her property shall be for her separate use; and to all such property as the Code so vests in her, she has the legal title, and, in a conventional trust, the trustee named therein, would hold the legal title, but if none was appointed, she would hold it herself. *Bridges & Wood vs. McKenna,* 14 *Md.,* 264.

The only effect of the Code, like that of the Statutes referred to, is to determine the condition and title of the woman's property, as affected by the coverture. It does not change in any way the personal relations of husband and wife. It gives them no power to contract with each other. It does not sever the unity between them. The language of the statute cannot be extended by implication; it will be strictly construed. *Towson's Adm. vs. Matthews*, 10 *Md.*, 254; 2 *Bright on Husband and Wife*, 224, sec. 13; *Grace vs. Darley*, 34 *N. Y.*, 296; *Ransom vs. Nicolas*, 22 *N. Y.*, 111; *White vs. Wagner*, 25 *N. Y.*, 363; *Yates vs. Durden*, 18 *N. Y.*, 279.

The fourth section of Art. 45 of the Code, provides "that a married woman, having no trustee, may, by her next friend, sue in a Court of Law or Equity in all cases for the *recovery*, or *security*, or *protection* of her property, as fully as if she were a *féme sole*."

The Act of 1853, ch. 245, sec. 2, gives to the wife the use of all remedies without the assistance of a next friend, in order to effect the object of that Act, which was to prevent the creditors of her husband from taking her property.

The effect of these laws is to give the wife such remedies as applied to her case. If the right affected was legal, her remedy was a legal one; if equitable, it was in a Court of Equity. She is not enabled, in law, to sue upon an equitable contract, or *vice versa*. Her right to sue is for the *recovery*, *security* or *protection* of her property. *Bridges & Wood vs. McKenna*, 14 *Md.*, 264.

A Court of Equity alone can adjust the right between husband and wife, growing out of the dealings with her separate property by her husband. They cannot be treated as ordinary debtor and creditor. There are rights and interests between them which the Court of Law cannot properly dispose of. 2 *Kent's Comm.*, 164, 370, 371; 2 *Bright. on Husband and Wife*, 223, 234; *Brown vs. Stewart*, 4 *Md. Ch. Dec.*, 686; 2 *Story's Equity*, secs. 1372, 1373; *Gover vs. Owings*, 16 *Md.*, 91; *Drury vs. Conner*, 1 *H. & G.*, 220; *Bridges vs. Phillips*,

25 *Ala.*, 136; *Crabb's Adm'r vs. Thomas,* 25 *Ala.,* 212; *Shirly vs. Shirly,* 9 *Paige,* 363.

If there were no right of action at law during the coverture, the death of the husband could not give one. The character of the transaction could not be affected by that event. The right which was left to his widow was an equitable contract, to be sued in a Court of Equity.

The theory of the appellants' second prayer was that the right of action was, by the marriage, suspended, by the consent of the wife, and, being once so suspended, was gone forever. A *chose* in action is a right to recover by an action, and if there is no right to recover, there is no *chose in action. Coffin vs. Burgess,* 22 *N. H.,* 119; *Co. Lit.,* 264, (*b ;*) *Sir John Needham's Case,* 8 *Co.,* 136; *Dorchester vs. Webb.* Cro. *Car.,* 373; 1 *Plow.,* 186, *a*; *Belsher vs. Burk,* 14 *E. L. & E. R.,* 272; *Wankford vs. Wankford,* 1 *Sal.,* 299; 8 *M., G. & S.,* 495; 2 *Dyer,* 1396, 100; *Ford vs. Burch,* 11 *A. & E.,* (*N. S.,*) 867.

The third prayer, rejected by the Court below, involves the right of the husband to reduce the *choses in action* of the wife into possession. The theory of the third prayer was that the right of the husband to reduce the *choses in action* of the wife into possession was not changed by Article 45 of the Code.

The Code is one statute, and all its provisions on this subject must be construed together; one part of it throws light upon and gives the key to understand the other. By taking this view, it will appear that it was not the intention to include *choses in action* in the words " property, real and personal," used in the Article of the Code in question.

*Choses in action* are not property, in the ordinary sense of the word. They are not assignable, or the subject of grant at common law. They do not pass by the designation of property. They are only evidence of so much money due. *Allen vs. Sewell,* 2 *Wen.,* 340; *Jac. Law. Dic. Chose,* 2 *Bl. Com.,* 289, 397, 442; 4 *Bl. Com.,* 434; *Topham vs. Lady Aglesbury,* 1 *Amb.,* 68, 69; *Chapman vs. Heart,* 1 *Ves. Jr.,*

Barton, *et al.*, Executors, *vs.* Barton.

274; *France vs. Nash, Cas. Temp., Hard.,* 53; *Handy vs. Dobbin,* 12 *John.,* 220.

Marriage never was a gift of the wife's *choses in action* to the husband. The right of action vests in him. They were his upon condition only that he reduced them into possession. 1 *Wil. on Ex'r,* 668, 755; *Co. Lit.* 351, *a.* If the right of the husband to reduce the wife's *choses in action* into possession exists, his promise to pay them, after so reducing them into possession, is *nudum pactum,* and is not the ground of action.

*Philip Frank Thomas,* for the appellee.

The Circuit Court properly rejected the first prayer of the appellants. A *fême covert* is competent to make a valid contract with her husband, with reference to her sole and separate property, of whatever kind or nature the same may be, where such property is held without the intervention of a trustee, and the legal title thereto is vested in her; and such contract may be enforced, during the coverture, by an action at law against the husband, in the name of the wife, by her next friend, in all cases where a like action would be the appropriate remedy between other contracting parties. In the event of the death of the husband, and the survivorship of the wife, such contract may also be enforced, by an action at law, in the name of the wife, against the executor or administrator of her deceased husband. 2 *Kent's Comm.,* secs. 128, 163, 166; 2 *Story's Equity Jur.,* secs. 1367, 1368, 1373, 1380; *Story's Eq. Plead.,* secs. 61, 62, 63; *Livingston vs. Livingston,* 2 *Johns. Ch. Rep.,* 539; *Atherly on Marriage Settlements,* 160, 161; *Legal and Equitable Rights of Married Women, (by Cord,)* sec. 136; 1 *Parsons on Cont.,* 357, 358, 359, *and note; Bridges & Co. vs. Phillips,* 25 *Ala.,* 136; *Crabb's Adm'r vs. Thomas,* 25 *Ala.,* 212; *Bowie vs. Stonestreet,* 6 *Md.,* 418; *Edelen vs. Edelen,* 11 *Md.,* 415; *State, use of Stevenson, vs. Reigart,* 1 *Gill,* 1; *Turton vs. Turton,* 6 *Md.,* 375; *Act of* 1842, *ch.* 293, *sec.* 8; *Act of* 1853, *ch.* 245; *Bridges & Woods vs. McKenna,* 14 *Md.,* 258.

The second prayer of the appellants was likewise properly rejected. Coverture does not extinguish a debt due from husband to wife, contracted before marriage, nor does it suspend the wife's right of action for the recovery thereof, where her personal property, including *choses in action*, together with the legal title thereto, is vested in her, to her sole and separate use. 2 *Story's Equity Jur.*, sec. 1370 ; *Russ vs. George, Sup. Court, N. H.*, abstract reported in American Law Register for September, 1866, page 700 ; *Legal and Equitable Rights of Married Women*, (by Cord,) secs. 380, 381, 382, 383, 384, 385 ; *Turton vs. Turton*, 6 *Md.*, 382.

The Court properly refused to grant the third prayer of the appellants : Because the marital rights of the husband, during coverture, to the *choses in action*, or other evidences of debt belonging to or acquired by the wife before or after marriage, including debts due from himself, as they existed at common law, or otherwise, are, by Article 45 of the Code, totally changed and abrogated, and she is thereby invested with the sole and separate property therein, to her own use, together with the legal title thereto. She holds such *choses in action* and other evidences of debt, with express power to dispose of them by will, without the consent of her husband, and, in other respects, clothed with all the legal and equitable incidents of a separate estate. She may sue for, collect and receive the money due thereon, and invest and re-invest the same at her own will and pleasure, or she may assign, transfer or loan such *choses in action*, or other evidences of debt, to her husband, or to any other person, and dispose thereof as fully as if she were a *féme sole*.

In regard to them, the husband has no marital rights whatever, which attach during the coverture. His interest therein arises after the termination of the marriage relation by death. It is purely potential, and dependent upon the occurrence of four several contingencies, namely, the failure of the wife to dispose of them during the coverture, her death and intestacy, his survivorship, and their reduction into possession, or the

recovery of a judgment for them during his life, without which latter acts, they survive to the representatives of the wife. He, therefore, takes them, not by virtue of his marital rights, but as husband, under the Act of Distribution. *Unger and Wife vs. Price*, 9 *Md.*, 552; *Smith, Garnishee of Leister, vs. McAtee*, 27 *Md.*, 420; *Stockett, Adm'r of Bird, vs. Bird's Adm'r*, 18 *Md.*, 484; *Legal and Equitable Rights of Married Women, (by Cord,) secs.* 331, 333, 366, 367; *Jaques vs. The Methodist Episcopal Church*, 17 *Johns. Ch. Rep.*, 548; *referred to in* 2 *Kent*, 165, 166; 2 *Story's Eq. Jur., secs.* 1391, 1393, 1394, 1395; *McQueen on Husband and Wife*, 27 *Law Library, marginal page* 47; 2 *Kent*, 136.

GRASON, J., delivered the opinion of the Court.

The question presented by this appeal for our determination is, whether an action at law can be maintained by the widow of a deceased party, against his executors, for the recovery of money loaned by her to her husband before marriage, and for the value of securities belonging to her, of her sole and separate estate, and loaned to the husband during the marriage, upon his express promise to re-pay her. There is no controversy in regard to the facts of the case, and the only defence to the suit which was attempted to be made, was one of law, raised by the three rejected prayers of the appellants, that upon the pleadings and evidence, the appellee was not entitled to recover in this form of action. The marriage between William A. and Caroline Barton took place after the adoption of the Code, and the first, second and third sections of the 45th Article of the Code provide that a married woman shall hold, to her sole and separate use, all the property, real and personal, which may belong to her at the time of the marriage, or which she may thereafter acquire by gift, grant, devise, bequest, or in a course of distribution, with the power of devising the same as fully as if she were a *féme sole*. It is not necessary for her to have a trustee to secure to her the sole and separate use of her property, but the legal title

thereto is, by law, vested in her. The fourth section confers upon a married woman, having no trustee, the right to sue, by next friend, in a Court of Law or Equity, in all cases for .the recovery, or security, or protection of her property as fully as if she were a *féme sole*. There is no doubt of the right of a married woman to sue, by her next friend, either at law or equity, in any matter perfectly cognizable in such courts, any stranger for the recovery, security or protection of her property. *Bridges & Woods vs. McKenna*, 14 *Md.*, 260. But it has been urged in argument that she cannot sue the husband at law, and that, after his death, no action will lie against his executors or administrators, unless it could have been maintained against him during his life-time. It is .true that public policy, originating in the delicate relation existing between husband and wife, forbids a wife from maintaining an action at law against her husband during the coverture, and her only remedy against him is by a proceeding in equity. But the wife, where she has no trustee, being vested, under the Code, with the legal title to her separate estate, and the executors or administrators of the husband, standing in the position of strangers to her, we cannot discover that either sound reason, public policy, or any principle of law, would prevent her from maintaining an action at law against his executors or administrators for the recovery of debts due by him to her at the time of his death, and growing out of contracts concerning her separate estate, and entered into during his lifetime. But it was also contended that a debt due by the husband to the wife for money lent before marriage, became extinguished by the marriage. At common law, such would have been the result. But the Code has changed the law in this respect, and by enacting that a woman shall hold to her sole and separate use all the property belonging to her at the time of the marriage, has the effect of preventing such a debt from being extinguished by the marriage. It was also contended that the *choses in action*, belonging to the wife, are not property within the meaning of the Code, and that, therefore, no power

is conferred upon her to maintain an action for the recovery of their value. We have no doubt that judgments, notes, or other securities and accounts, taken by the wife upon the sale, or other disposition of her separate estate, or for services rendered, or work done by her, and all *choses in action* held by her at the time of her marriage or acquired subsequently, are *property* within the meaning of the Code, for the recovery, security or protection of which she can maintain an action.

As the judgment of the Court below will be affirmed, it is unnecessary to notice the exception taken by the appellee to the granting of the fourth prayer of the appellants, no appeal having been taken by her.

*Judgment affirmed.*

(Decided 4th March, 1870.)