## LAVINA SMALL v. DAVID W. SMALL.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY.

Argued June 4, 1889—Decided October 7, 1889.
[To be reported.]

1. A single sentence, even though it form a separate section of a statute, is not to be construed apart from the context, or without regard to its subject matter and the general purpose sought to be accomplished.
2. The Married Persons Property Act of June 3, 1887, P. L. 332, does not authorize a wife to sue her husband directly and in her own name, for the recovery of money received by him from her separate estate.
3. The language of § 4 of the said act, taken by itself, is perhaps broad enough to include an action by one directly against the other, but the act as a whole cannot fairly be construed as authorizing such an action.
4. So great a change in the policy of the law, upon a subject such as the marriage relation, should not rest on inference or implication from general words, but should appear by the explicit and unquestionable mandate of the legislature.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 12 May Term 1889, Sup. Ct.; court below, No. 87 December Term 1888, C. P.

On September 17, 1887, Lavina Small brought assumpsit against David W. Small to recover $3,383, alleged to have been received by the defendant for the use of the plaintiff. On September 13, 1888, the defendant filed a plea in abatement, averring that the plaintiff was, at the commencement of the action, and still was the lawful wife of the defendant. To this plea the plaintiff demurred. The defendant having filed a joinder in demurrer, the court, after argument, entered judgment sustaining the demurrer and directing that the defendant answer over; exception.[1] Thereupon the defendant pleaded non-assumpsit, payment and the statute of limitations, and the same day, September 13, 1888, a jury was empaneled to try the issue.

Upon the trial the following facts were admitted:

The plaintiff both at the time the action was commenced and at the time of trial, was the lawful wife of the defendant. They were married in February 1844, and from that time un til the trial lived together continuously as husband and wife. Subsequently to the year 1856, the defendant received $2,200 of moneys derived from the separate estate of his wife, the plaintiff.

The defendant was offered as a witness to prove that whilst he had received the money, it was a gift, and not to be repaid to her at any time. The competency of the witness was objected to, and the offer refused.

No further evidence being adduced, the court, Rowe, P. J., charged the jury as follows:

The plaintiff, Lavina Small, brings this action against David W. Small to recover a large sum of money. It is admitted that Lavina Small is the wife of David W. Small, that they were married in 1844, and that she was at the commencement of this suit and now is his wife. On the other hand it is admitted that David W. Small received from his wife, subsequently to the year 1856, the sum of $2,200, which money was derived from her separate estate. That is all the evidence there is in the case, and I instruct you that on that evidence the plaintiff is entitled to recover the sum of $2,200, she not claiming any interest whatever. When it is proved or admitted that a husband, subsequently to the year 1848, received

the moneys or properties of his wife, the presumption of law is that he received it from her by way of a loan, and to be re-paid, and not that he received it as a gift.

Counsel for defendant have asked us to instruct you upon two points.

1. The court is respectfully requested to instruct the jury that it being admitted that this plaintiff and defendant are husband and wife ; that they were married many years ago and lived together as man and wife from the date of their marriage until the bringing of this action, then this action cannot be maintained, and the verdict must be for the defendant.

Answer: I have already settled this question upon a plea of abatement which was filed in the case, and I now refuse this point.[2]

2. That there being no evidence in this case of any promise by the defendant to repay the plaintiff the moneys received by him, there can be no recovery.

Answer: This point I refuse also, and I instruct you now that upon the evidence you ought to render a verdict in favor of the plaintiff for the sum of $2,200.[3]

The jury then rendered a verdict for the plaintiff for $2,200, and judgment was subsequently entered thereon; whereupon the defendant took this appeal, specifying that the court erred:

1. In sustaining the demurrer to the plea in abatement.[1]

2, 3. In the answers to the defendant's points.[2] [3]

*Mr. W. Rush Gillan* (with him *Mr. F. M. Kimmel*), for the appellant:

1. This action could not have been maintained prior to the act of June 3, 1887, P. L. 332. The court is now called upon for the first time to construe the fourth section of that act. In such construction, the old law and its mischiefs must be considered. What were those mischiefs ? Upon reading the act we think we can discover what the legislature deemed them to be, and what it undertook to remedy. They saw that a married woman's coverture stood in the way of a full, free and expeditious transaction of affairs, necessary for the support and comfort of herself and family; that in order to make contracts with her legal and binding, it was necessary for every mechanic

and every tradesman to have a knowledge of the most intricate questions of law; and that to recover even the smallest account against her required the services of a skilful lawyer. These were the mischiefs they undertook to remedy.

2. Accordingly, the legislature, by the second and third sections of the act, imposed upon a married woman the same liability with reference to her contracts, as upon any other person, provided such contracts relate to any trade or business in which she may be engaged, or to the improvement of her separate estate, or to the procurement of necessaries. By the second section, she is rendered capable of suing or being sued upon such contracts, or for torts committed to or by her, as if she were a feme sole. The provision in the same section that her husband need not be joined with her as plaintiff or defendant in any action brought by or against her in her individual right, must be taken to refer to the actions before enumerated. Hence § 4 was added to make it unnecessary for the husband to be joined as plaintiff in other actions. We take it that now, a married woman loaning money can sue for its recovery without the joinder of her husband, and that is all the fourth section means.

3. There never has been any mischief arising out of the fact that a wife could not sue her husband except as is provided in § 3, act of April 11, 1856, P. L. 315, and act of June 11, 1879, P. L. 126. The mischief has always been the other way, to wit, in the confession of judgments to the prejudice of honest creditors. As originally introduced into the senate the act of 1887 expressly gave to husband and wife civil remedies against each other: Legislative Record, 1887, vol. 1, p. 896. No other reason can be given for the striking out of that provision than that the legislature intended to be withheld the right to maintain such an action as this. It will not do to say that the words stricken out were removed because considered tautological; the idea contained in them is not to be found anywhere else in this section, or in the act. The act ought not to be held to confer such a right of action by inference. Statutes are not presumed to alter the common law further or otherwise than is clearly declared: Archer v. Bokenham, 11 Mod. 150; Pettit v. Fretz, 33 Pa. 122; Bac. Abr., tit. Statute 1, pl. 4.

4. The construction of the act should be such as will best

answer the intention of its makers : Plowd. 232 ; Pettit v. Fretz, supra. When the intention of the legislature is doubtful, the court will interpret the law to be what is consonant with equity : Kerlin v. Bull, 1 Dall. 176. Following these rules of construction, how should this statute be interpreted? What was the intention of the legislature? Surely there was no occasion to permit the wife to sue the husband, while the marriage relation exists. What construction is agreeable to the rules of the common law, and what is consonant with equity? By the common law the husband and wife are one person, and the possibility of a civil suit between them is excluded. The evil consequences which would follow the destruction of this legal unity, have been set forth clearly by some of the wisest judges that ever sat in this court : Ritter v. Ritter, 31 Pa. 396 ; Bear v. Bear, 33 Pa. 526. If it is to be destroyed, this must be done by unmistakable language : Ritter v. Ritter, supra.

5. That the legislature did not intend to destroy by this statute the legal unity of husband and wife, is apparent from their passing, about the same time, the act of May 23, 1887, P. L. 158, providing that husband and wife should not testify against each other. The laws of Pennsylvania have been very liberal in modifying the common law doctrine as to the marriage relation, but the time has now come to call a halt. It was contended in the court below, that a wife always had a right to proceed against her husband in equity and that the evils of litigation would be no greater if she proceeded at law. The cases cited to support this argument were Williams's App., 47 Pa. 307 ; Miller v. Miller, 44 Pa. 170 ; Bergey's App., 60 Pa. 416, and Gleghorne v. Gleghorne, 118 Pa. 383. We answer this by simply saying that not one of these authorities supports the contention that, in the circumstances of this case, a wife could enforce such a claim as this against her husband in equity.

*Mr. O. C. Bowers* (with him *Mr. Alex. Stewart*), for the appellee :

1. We contend that this action is maintainable under § 4, act of June 3, 1887, P. L. 333. There has been a gradual and progressive amelioration of the harsh rule of the common law by the following series of enactments : Section 22, act of April 15, 1851, P. L. 675 ; § 2, act of May 4, 1855, P. L. 430 ; § 3, act of

April 11, 1856, P. L. 315; § 2, act of June 11, 1879, P. L. 126. This course of legislation may throw light upon the intention of the legislature as expressed in the act of 1887, which is but a very short step in advance of the last preceding act.

2. Husband and wife could always proceed against each other in equity: Miller v. Miller, 44 Pa. 170. We have heard of no evil results from this power, and how a suit in a common law court could cause a disturbance of domestic relations which a proceeding in equity would not, we leave the other side to explain. The direful results prophesied in Ritter v. Ritter, 31 Pa. 396, have not followed the legislation before referred to. For our part we prefer the more cheerful views of Mr. Justice AGNEW in Williams's App., 47 Pa. 308. In the same spirit is the language of this court in Kincade v. Cunningham, 1 Mona. 9.

3. Any other construction of the fourth section of the act of 1887 than that for which we contend, would result in a reductio ad absurdum. The act either authorizes both husband and wife to sue each other, or else it authorizes neither to sue the other. If it does not authorize the husband to sue the wife, then we have a statute solemnly conferring upon a married man the same rights to sue persons other than his wife, which an unmarried man possesses. This is of course absurd.

4. The defendant having admitted that since 1856 he received $2,200 of his wife's money, the presumption is that he received it for her, and that it continues hers; and the burden is upon him to prove the contrary: Grabill v. Moyer, 45 Pa. 530; Mellinger's Admr. v. Bausman, 45 Pa. 522; Johnston v. Johnston, 31 Pa. 450; Gicker v. Martin, 50 Pa. 141; Bergey's App., 60 Pa. 408; Hamill's App., 88 Pa. 367. His mere possession of his wife's money is no evidence that the title to it has been vested in him: Hamill's App., supra.

OPINION, MR. JUSTICE MITCHELL:

The single question presented is whether the act of June 3, 1887, P. L. 332, known as the Married Persons' Property Act, authorizes a wife to sue her husband directly and in her own name for money received by him from her separate estate.

Section 4 of the act reads: "Husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons, for the protection and recovery of their separate property, as unmarried persons."

This language is general and unlimited. It makes no exception of actions against each other, and, taken by itself, its natural meaning is, perhaps, broad enough to include them without straining. But no rule of judicial interpretation is wiser or better settled, than that which prohibits the taking of a single sentence, even though it form a separate section of a statute, and construing it apart from the context, or without regard to the subject matter and the general purpose sought to be accomplished. The present act gives notable warning of the danger of such a course. Though not long, it is extremely intricate and confused, if not contradictory. The first two sections make the same general grant at least four times, and each time with such variation, that though the general purpose is clear, very difficult questions may be raised as to the exact limits of the powers conferred. Section 3 then proceeds to grant certain specific powers, all of which, except for the doubt raised by this section itself, are clearly conferred by parts of the language of the preceding sections. It is a striking example of what is not infrequent in legislation, and the avoidance of which, I may say in passing, is by no means the least difficult of judicial accomplishments, the desire to enforce and emphasize the intention, leading to a second expression which tends to becloud the first. Next is the fourth section, with which we are immediately concerned. Like the preceding section, it seems to be the product of a desire to emphasize a grant already abundantly implied in the control over property, " with all the rights and liabilities incident thereto " of the first section, and expressly given in the capacity to sue and be sued provided by the second. Can it be fairly construed to mean more than this? The general purpose of the act is clear enough. It is to give married women the same freedom of ownership, control, and disposition of their property and earnings, and the rights and remedies incident thereto, that men have over theirs. It accordingly confers upon them the absolute power of disposition of their personal property, but requires the joining of the husband in the mortgage or conveyance of real estate. The rights of action conferred, either by implication in § 1, as already said, or expressly in the later sections, are given as means of maintaining the rights of property conferred by the sections themselves, and there is nowhere any indication of a

purpose to extend them beyond their character as a necessary incident for that purpose. Still less is there any indication of a purpose to extend the rights or powers of the husband, which a right to sue the wife under the construction of § 4 contended for would certainly do.

If we look not only at the general intent of the act, but more closely at the language used, we are led to the same result. The purpose is not only expressed broadly in apt language once, but is repeated and reiterated with superabundant caution. In this varied and detailed consideration, it is impossible to suppose that so important a branch of the subject as the right of action between husband and wife should not have been thought of, or being thought of should not have been granted in unequivocal terms, if intended to be granted at all. To legislators, versed in the principles of the common law, it would immediately suggest itself as a distinct and momentous departure from the legal policy of centuries, which ordinary phraseology, however general, would not commonly be understood to intend, and it is inconceivable that under such circumstances, it should be granted obscurely and by implication. As said by WOODWARD, J., in Ritter v. Ritter, 31 Pa. 398, "if the legislature meant that such actions as the present should be sustained, they had command of a very copious language in which to express their will." The acts of April 11, 1856, P. L. 315, and June 11, 1879, P. L. 126, make provision for actions by the wife against the husband in cases of desertion, or neglect or refusal to support, and we conclude that the legislature thought this remedy ample, without extending it to suits between parties living amicably together in the marital relation.

This view is confirmed almost to a demonstration by the legislative history of the act of 1887. The fourth section follows closely the English Married Woman's Property Act of 1882, 45 and 46 Vict., c. 75, Law Rep. Stat., 1882, p. 458; and, as originally introduced into the senate, it provided, as that act does, that "husband and wife shall have the same civil remedies upon contracts in their own name and right against all persons, including each other," etc.: Legislative Record, 1887, p 896. This specific provision which put the change in the previous law into that precise, definite, and unquestionable form which its importance demanded, was struck out, and the

section passed without it. The inference from this action is irresistible, that the legislature did not intend that actions between husband and wife, while living together, should be authorized.

It is argued that as the language is the same with respect to both husband and wife, it must authorize both or neither to sue the other, and, therefore, if it does not authorize the husband to sue the wife, we shall have the absurd result that the legislature has solemnly conferred upon a married man the same right to sue strangers that an unmarried man possesses. This is not without plausibility, and, if the section stood alone, would be of much force. But taken in its connection, it is an additional link in the argument that the husband's rights, except as involved in the regulation of his wife's, were not intended to be affected at all. The same may be said of the phrase, " their separate property," in the same section. What is a husband's separate property? In the language of the law, such a phrase is as absurd as the result pictured in the argument referred to. In truth, the real explanation of both phrases, entirely unsuitable as they stand, is the failure to notice the effect of striking out the words, "including each other," contained in the act as originally introduced. With these words left in, the absurdity as to suits by the husband disappears, and the phrase "separate property," though not elegant as to legal style, is clear and definite in its meaning.

There are several other changes from the first draft to the act as finally passed, such as the striking out of § 3 of the power to convey real estate without the husband joining, and the attaching of a proviso to the contrary to § 1, etc., which indicate that the act as originally introduced was much more radical in its changes than the legislature was willing to pass, and we think it clear that the authority to sue each other was one of the proposed changes which were refused a sanction.

One further consideration which may be adverted to, is the hardship and injustice which might arise as to past matters by the grant of a universal and unrestricted right to sue upon a claim which the defendant may have had no reason to expect or foresee. The present case affords a striking example of these dangers. Of course, I do not speak of the moral merits of the case, for of these I know nothing, but of the legal

possibilities. The husband received this money about 1856. There is no claim that he received it against the wife's will, nor any evidence that it was not used for their mutual benefit in the support of the family. Thirty years after it has been thus spent, presumably with her entire approval, a difference or quarrel occurs, and the wife sues to recover the money. No promise to pay is proved or pretended. The plaintiff rests on the presumption that her husband received it as trustee for her, and as her counsel truly say, "the burden is upon him to prove the contrary." Yet the very same legislature that is claimed to have put this action and its consequent burden upon him, in a most ably drafted and elaborately considered statute on the competency of witnesses, expressly denied him the right of testifying that the money was given to him by her, or that he spent it at her direction. This, of course, is a legislative rather than a judicial argument, but it adds force to the considerations which induce the court to say now, as it has said with marked emphasis heretofore, that so great a change in the policy of the law, upon a subject that may come home to every householder in the commonwealth, should not rest on inference, or implication from general words, but should appear by the explicit and unquestionable mandate of the legislature; and when the change is made, if at all, it should be done in such form as to guard against the possibilities of injustice in regard to past transactions such as are suggested by the present case.

Judgment reversed.