SAMUEL D. FORBES *vs.* GAVIN THOMPSON and JOHN WALTHER, trading as GAVIN THOMPSON & Co.

*Attachment fi. fa.—Execution — Garnishee — Practice — Married Women—Sheriff's Return; Motion to Strike Off — Writ; Motion to Quash—Statute; Construction of.*

1. One of the defendants in a judgment had died more than a term of court before the issuance of a writ of attachment against both defendants. *Held* that the writ was properly and legally issued. While the officer in executing the writ could not seize or attach any property which belonged to the deceased defendant, the process properly followed the judgment on which it was issued.

2. An attaching creditor stands in no better position than the defendant in the judgment, as to the collection of a debt due to the latter from the garnishee. The right of such creditor to recover against the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability is that he has funds, property or credit in his hands belonging to the debtor, for which the latter would have a right to sue. The garnishee stands in every respect in the same position as he would have been had the suit been brought by his own debtor.

3. The "act for the protection of women," *Chap. 350, Vol. 14, Laws of Delaware, (Rev. Code, 600)*, does not authorize the husband to maintain an action at law against his wife, and inasmuch as the attaching creditor has no greater power in the collection of the debt from the garnishee than the judgment debtor would have, it follows that the wife cannot be summoned as garnishee of her husband.

(*June 9, 1900.*)

Judges GRUBB, PENNEWILL and BOYCE, sitting.

*Herbert H. Ward* and *Andrew C. Gray* for plaintiff.

*William F. Kurtz* for garnishee. (Special appearance for motion.)

Superior Court, New Castle County, May Term, 1900.

Attachment *fi. fa.,* (No. 2, May Term, 1900.)

RULE TO SHOW CAUSE why sheriff's return should not be set aside. Motion to strike off the return and quash the writ.

The facts appear in the opinion of the Court.

PENNEWILL, J., delivering the opinion of the Court:

In this case an attachment *fieri facias* was issued against Gavin Thompson and John Walther, defendants in a certain judgment in the Superior Court of this county, in favor of Samuel D. Forbes.

Thompson, one of the defendants, had been deceased for more than a term of Court prior to the issuing of said attachment. There was no attempt or intention on the part of the plaintiff to attach the property of the deceased Thompson, but only that of the survivor. The writ was directed against both, so as to conform to the judgment upon which it was issued.

In pursuance of such writ to him directed the sheriff summoned Mary E. Walther as garnishee of John Walther. It is admitted and agreed by counsel on both sides that the said Mary E. Walther is the wife of the surviving defendant in said judgment.

A petition was filed in this Court by John Walther, asking (1) that the writ of attachment *fi. fa.* issued upon said judgment be quashed, upon the ground that no such process could be properly and legally issued against the deceased defendant until his personal representatives had been made parties by *scire facias*; and (2) that the return of the sheriff summoning Mary E. Walther as garnishee be stricken out and vacated, on the ground that under the laws of this State a wife cannot be summoned as garnishee of her husband.

We think that the writ of attachment was properly and legally issued. While the officer in executing said writ could not seize or attach any property which belonged to the deceased defendant in the judgment, we think the process properly followed the judgment on which it was issued. So far as we know such has been the practice in this State in similar cases, and we can see no reason, and know of no precedent, for making the representatives of the deceased judgment debtor parties when it is not proposed in

any manner to proceed against or affect the property of such defendant.

The authorities cited by counsel for the petitioner on this point seem not at all pertinent. They are cases in which there was one party defendant in the judgment, who died prior to the issuance of the execution; and the purpose was to levy upon the property that belonged to such deceased party.

*Cooper vs. May, 1 Harr., 18; Farmers' Bank vs. Reynolds, 1 Harr., 513.*

The remaining question has given us more concern, because it involves a consideration of the act commonly known as the married women's act of 1873.

It has been repeatedly declared by this Court, in conformity with the decisions of courts of other states and the doctrine laid down by text writers, that the attaching creditor stands in no better position than the defendant as to the collection of a debt due to the latter from the garnishee.

It is the general rule that the right of the attaching creditor to recover against the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability, is that he has funds, property or credits in his hands belonging to the debtor, for which the latter would have a right to sue.

*Odenhal et. al. vs. Devlin, 48 Md., 444.*

The garnishee stands in every respect in the same position as he would have been had the suit been brought by his own creditor. The fact that a garnishment process has been served upon him places him in no worse position and under no greater liability than he would have been had an action at law been brought against him by the principal defendant to whom he was indebted, or whose property he had in his possession.

*Shinn on Attachment and Garnishment, Vol. 2, Sec. 487.*

Such doctrine is based on principle and sound reason. When the debt is due from the garnishee to the judgment debtor by vir-

tue of an agreement existing between them, the garnishee is entitled to avail himself of all defences that could be made against the party to whom the debt is owing and with whom the contract was made.

A very important question therefore to be determined in this case, is whether the husband could maintain an action at law against the wife for the collection of the debt, or the recovery of the property, sought to be obtained in this attachment proceeding.

It is admitted that the husband had no such power at common law, and that if such power exists it must be by virtue of the married women's act above mentioned. The only provisions of such act which seem pertinent to this inquiry are *Sections 1 and 4, Chap. 550, Vol. 14 Laws of Delaware, (Rev. Code, 600.)*

The first section of the act provides that the real and personal property of any married woman acquired in any manner whatsoever from any person other than her husband, shall be her sole and separate property. By section 4 it is provided " that any married woman may prosecute and defend suits at law or in equity for the preservation and protection of her property as if unmarried, or may do it jointly with her husband, but he alone cannot maintain an action representing his wife's property ; and it shall be lawful for any married woman to make any and all manner of contracts necessary to be made with respect to her own property, and suits may be maintained on such contracts as though the party making them was a *femme sole."*

It is section 4 which the attaching creditor insists gives the husband the power to sue the wife, and sustains his right to summon the wife as garnishee of her husband.

Is such the meaning and intent of that section? Will it admit of such a construction? The said act was in derogation of the common law, and plainly designed for the benefit of married women and the protection of their property. It is a remedial statute, and to be construed so as to suppress the mischief against which it was aimed, but not as altering the common law any further than is necessary to remove that mischief.

Section 1 defines what shall be the sole and separate property of a married woman, and expressly excludes such as she may acquire from her husband. While the common-law rule was abrogated so far as it affected property the wife might acquire from any and all other persons, it was strictly preserved as to property she might obtain from her husband.

Undoubtedly it was the purpose of the law makers, by section 1 of the act, to make a distinction between the husband and third parties as to the property rights and relations of married women. When section 4 is construed in connection with section 1 it becomes apparent that the scope and intent of the latter section was to give to married women the right to make contracts, and maintain and defend suits, in respect to her own property as though she was a *femme sole;* and that the words " her own property" mentioned therein are confined to property acquired from persons other than her husband. It surely cannot include that which she might obtain from him.

How, then, can it be contended, even by inference or implication, and much less by express words, that section 4 confers on the husband the power to sue his wife at law. It is true that section 4 provides that suits may be maintained on contracts necessary to be made by the wife with respect to her own property as though she was a *femme sole.* But it in no wise confers on the husband the power to maintain an action at law against her, because *suits* are confined by the statute to property which the wife may acquire from persons other than her husband. It seems not only illogical, but unwarranted by any rule or canon of statutory construction, to hold that an act passed for the benefit of married women gives the husband the right to sue his wife at law when such power is not clearly conferred by the statute in question. The act was designed, and by its title is declared to be, for the protection of women. It was not intended to operate to their disadvantage and injury; and will not be so construed as to give the husband a right to maintain an adverse and hostile action against her—which was not per-

mitted at common law—unless the statute clearly clothes him with such power.

Our attention has been called by the counsel for the attaching creditor to section 9 of the above mentioned act, but we fail to see that it has any bearing on the question before us. It provides that a married woman may give a bond with or without a warrant of attorney just as if she was a *femme sole*. In the case of *Wardner, et. al., vs. Stewart, 2 Marvel, 275*, this Court held that under that section a married woman might become security for her husband on a bond. It could not very well have been held otherwise, because the language of the section is so clear and comprehensive that no other construction was possible.

The authorities cited by counsel for the plaintiff in the judgment do not seem to be of any assistance to the Court in this case, and, with the exception of the case in *48 Maryland*, are not at all in point. In the case before us we are called upon to construe our own statute, and if decisions in other states are to be of any aid at all, they must be based on statutes similar to ours.

The case of *Odenhal, et al., vs. Devlin, 48 Md., 439*, was in many respects similar to the one before us, except in that case it was sought to hold the husband as garnishee of the wife. In the Maryland case the Court referred to *Barton vs. Barton, 32 Md., 224* in which it was held that a married woman cannot maintain a suit at law against her husband, because to permit such suit would be contrary to public policy and inconsistent with the close and delicate relation existing between the parties; and also referred to *Myer, et al., vs. Insurance Company, 40 Md., 595*, in which it was laid down as well settled that the plaintiff in attachment as against the garnishee is subrogated to the rights of the debtor, and can recover only by the same right, and to the same extent, as the debtor might recover if he were suing the garnishee.

After reviewing those cases the judge said, that while the general rule was therein correctly stated, there were nevertheless exceptions to such rule, as for instance if the debtor had fraudently conveyed property to another, the grantee may be charged as garnishee

though the fraudulent grantor could not maintain a suit. It was accordingly held by the Court in that case that an attachment could be laid in the hands of the husband as garnishee of the wife.

It is impossible for us to distinguish this case in principle from the other two therein referred to in which it was ruled that the plaintiff in attachment can recover only by the same right and to the same extent as a debtor might recover if he were suing a garnishee. The reason which apparently influenced the Court in holding that the husband might be held as garnishee of his wife, contrary to the general rule which would seem to be applicable to such cases, was the possibility that the wife might fraudulently place her funds or property in the hands of her husband and thereby make the creditor's remedy by attachment nugatory and worthless. But it seems to us that a sufficient remedy even in such case might be found in some other proceeding, and in a Court of Equity, which would be the proper tribunal for the investigation and determination of such questions.

From the reasoning of the Court in the case in *48 Maryland,* it appears that the conclusion there reached might have been the same even before the enactment of the married woman's law. It was conceded that under such statute the wife could not sue her husband at law. If such were the case then certainly it conferred no power on the attaching creditor to proceed against the husband as the wife's garnishee.

The attaching creditor in the case before us relies on the married woman's act of 1873 above mentioned for the authority to sustain his garnishment of the wife; and no one will contend that prior to the passage of that act a married woman could be summoned in this State as garnishee of the husband. We are clearly of the opinion that there is nothing in the act that confers such power, and therefore hold that Mary E. Walther could not be summoned as garnishee under the attachment in question.

The order of the Court is that the part of the Sheriff's return which shows that Mary E. Walther was summoned as garnishee be stricken out and vacated.