JOSEPH PLOTKIN *vs.* CECELIA PLOTKIN and JOSEPH BADER.

1. **HUSBAND AND WIFE—LEGAL EXISTENCE OF WIFE MERGED IN HUSBAND AT COMMON LAW.**

   At common law, the legal existence of the wife was merged in that of her husband, and she could not contract in her own name, own property, sue or be sued.

2. **HUSBAND AND WIFE—STATUTES REMOVING MARRIED WOMAN'S DISABILITIES ARE TO BE STRICTLY CONSTRED.**

   Statutes removing disabilities of married women at common law are to be strictly construed, and no rights are to be granted other than those clearly expressed.

3. **HUSBAND AND WIFE—STATUTE HELD NOT TO CONFER UPON HUSBAND AND WIFE RIGHT TO SUE EACH OTHER.**

   *Rev. Code* 1915, § 3048, as amended by 30 *Del. Laws, c.* 197, § 16, further removing common-law disabilities of married women, does not, in view of legislative history, confer upon a husband and wife the right to sue each other.

(*April* 19, 1924.)

RICHARDS and RODNEY, J. J., sitting.

*William Prickett* for plaintiff.
*James I. Boyce* for defendants.

Superior Court for New Castle County, January Term, 1924.

Action of replevin, No. 82, November Term, 1923.

Action brought September 10, 1923, to recover the possession of certain personal property named in the writ.

The narr. was filed on November 16, 1923, to which a plea in abatement was filed by one of the defendants, Cecelia Plotkin, setting up the fact that "the plaintiff, for a long time before and at the time of the commencement of this suit,was and continued and still is married to her, the said defendant," and she, therefore, contends that including her as one of the defendants in the suit

amounts to a misjoinder. The plaintiff demurred to this plea and the question was argued at the January Term, 1924.

RICHARDS, J., delivering the opinion of the Court:

The question raised by the plea in abatement and demurrer filed in this case is, whether a husband can sue his wife, or as it is generally expressed by text writers, whether one spouse can sue the other. There is no branch of the law which has undergone greater changes than that which deals with the mutual rights, duties, and liabilities of husband and wife. Under the early Roman law the marital power of the husband was absolute. The identity of the wife was so completely merged in that of the husband, that he not only became the possessor and owner of all her property and was entitled to all her labor and earnings, but he could punish, sell or even kill her. 30 *C. J.* 506.

[1] Likewise at common law, the legal existence of the wife was merged in that of her husband, and they were termed and regarded as one person in law. She could not contract in her own name, own property, sue or be sued. *Johnson v. Greens' Garnishee*, 1 *Harr.* 442; *Valentine v. Tantum*, 7 *Houst.* 402, 32 *Atl.* 531; *Black v. Clements*, 2 *Penn.* 499, 47 *Atl.* 617; *Forbes v. Thompson*, 2 *Penn.* 530, 47 *Atl.* 1015; *Vincent v. Ireland*, 2 *Penn.* 580, 49 *Atl.* 172; *Masten v. Herring*, 6 *Penn.* 282, 66 *Atl.* 368; *Eliason v. Draper*, 2 *Boyce* 1, 77 *Atl.* 572; *Godman v. Greer*, 12 *Del. Ch.* 397, 105 *Atl.* 380; *Heyman v. Heyman*, 19 *Ga. App.* 634, 92 *S. E.* 25; *Kalfus v. Kalfus*, 92 *Ky.* 542, 18 *S. W.* 366; *Stonesifer v. Shriver*, 100 *Md.* 24, 59 *Atl.* 139; *Keister's Adm. v. Keister's Ex'rs*, 123 *Va.* 157, 96 *S. E.* 315, 1 *A. L. R.* 439.

Constitutional amendments have been adopted in some states removing, to a certain extent, the common law disabilities of married women and enlarging their property right. The tendency of modern legislation seems to be to remove the incapacity of a married woman, and today there are many statutes on the subject in England and also in most of the states in this country removing the greater part of her common law disabilities, and in some instances removing them entirely. In some states which have statutes

granting to married women full capacity to sue and be sued, the courts have held that an action at law can be brought by a wife against her husband. These decisions are based upon the theory, however, that the statutes of the states in which they were rendered have entirely destroyed the unity of the legal identity of husband and wife and replaced it by the equality of each in legal identity, in consequence of which they possess equal rights of owning property, of contracting with others and with each other and of suing and being sued. *Mathewson v. Mathewson,* 79 *Conn.* 23, 63 *Atl.* 285, 5 *L. R. A.* (*N. S.*) 611, 6 *Ann. Cas.* 1027; *Rice v. Crozier,* 139 *Iowa* 629, 117 *N. W.* 984, 130 *Am. St. Rep.* 340; *May v. May,* 9 *Neb.* 16, 2 *N. W.* 221, 31 *Am. Rep.* 399; *Manchester v. Tibbetts,* 121 *N. Y.* 219, 24 *N. E.* 304, 18 *Am. St. Rep.* 816; *Winter vs. Winter,* 191 *N. Y.* 452, 84 *N. E.* 382, 16 *L. R. A.* (*N. S.*) 710.

Other decisions rendered in states having statutes giving a married woman the right to the sole control of her property and to sue generally, hold that she cannot sue her husband. The ground for these decisions being that the statutes did not, in express words, confer upon the husband and wife the right to sue each other. *Perkins v. Blethen,* 107 *Me.* 443, 78 *Atl.* 574, 31 *L. R. A.* (*N. S.*) 1148; *Heacock v. Heacock,* 108 *Iowa* 540, 79 *N. W.* 353, 75 *Am. St. Rep.* 273; *Kalfus v. Kalfus,* 92 *Ky.* 542, 18 *S. W.* 366; *Barton v. Barton,* 32 *Md.* 214; *Ritter v. Ritter,* 31 *Pa.* 396; *Bertles v. Nunan,* 92 *N. Y.* 152, 44 *Am. Rep.* 361; *Small v. Small,* 129 *Pa.* 366, 18 *Atl.* 497.

The following quotation from the opinion of Judge Woodward in the case of *Ritter v. Ritter,* 31 *Pa.* 398, we consider very expressive:

"The marriage relation, as old as the human race, and the basis of the family, which is itself the basis of society and civil states, has always been sedulously guarded and cherished by the common law."

The disabilities imposed upon married women by the common law continued in force in this state until 1865, when an act was passed entitled, "An act for the benefit of married women." 12 *Del. Laws, c.* 572. This act provides that the real estate, mort-

gages, stocks and silver plate belonging to any married woman at the time of her marriage, or to which she may become entitled at any time during marriage, shall be her sole and separate property and shall not be subject to the disposition of her husband; but she cannot sell said property without the consent of her husband. The next act was passed in 1871 (14 *Del. Laws, c.* 80), and provides, that the money or other property of a married woman, not living with or supported by her husband, and which can be distinguished from his property, shall not be deemed her husband's property or taken for his debts so long as they live apart and he fails to support her; and further provides that while her separation continues she may sue and be sued, as a single woman. The next act was passed in 1873 (14 *Del. Laws, c.* 550), *Section* 4 of which provides:

"That any married woman may prosecute and defend suits at law or in equity for the preservation and protection of her property as if unmarried, or may do it jointly with her husband, but he alone cannot maintain an action respecting his wife's property; and it shall be lawful for any married woman to make any and all manner of contracts necessary to be made with respect to her own property, and suits may be maintained on such contracts as though the party making them was a *femme sole.*"

The next act was passed in 1875 (15 *Del. Laws, c.* 165), and provides that the real and personal property of any married woman acquired in any manner or from any person other than her husband, shall be her sole and separate property; also that any executrix or administratrix, being a married woman, shall have as full power to act in such capacity as though she were a *femme sole*; also that she may give a bond, mortgage or recognizance to secure the purchase money for real estate; and that she may give a bond as if she were a *femme sole.*

[2, 3] The next act of this character, being the one which we are called upon to construe in this case, was passed in 1919 and provides as follows:

"That the property of a married woman, whether real, personal, or mixed and choses in action which she may have acquired in any manner, and all the income, rents and profits thereof, shall be deemed to be her sole and separate property and she may sell, convey, assign, transfer, devise, bequeath, encumber or otherwise dispose of the same, and she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers, including the power to make a will, which a *femme sole* may do under the laws of this state." 30 *Laws of Delaware, c.* 197, § 16 (*Rev. Code* 1915, § 3048).

While the tendency of each of the acts above mentioned has been to further remove the disab'lities placed upon a married woman by the common law, yet none of them has by express words conferred upon her the right to sue her husband or provided that she can be sued by her husband in a court of law.

Said acts being in derogation of the common law, it has been generally held by the courts in this country, including those in our own state, that they must be construed strictly. In the case of *Valentine v. Tantum*, reported in 7 *Houst.* 402, 32 *Atl.* 531, which is the first reported case in this state, in which the acts for the benefit of married women which existed at that time were construed, the Court used the following language:

"While it is true as a general proposition that statutes in derogation of, or repugnancy to, the common law, are to be construed strictly, and nothing is to be intended in aid of them, except what is clearly imported by their language; yet, where they are of a remedial character (as the acts in question must be taken to be) the rule does not so rigidly apply. But at the same ti me, the language of such acts, where there is any bearing upon the question, is not to be wrested from its connection or an imaginary meaning given to it, to make it subserve the ends of free interpretation."

Our Court affirmed this principle in the case of *Forbes v. Thompson*, 2 *Penn.* 530, 47 *Atl.* 1015, when it said in construing the act passed in 1873:

"The said act was in derogation of the common law, and plainly designed for the benefit of married women and the protection of their property. It is a remedial statute, and to be construed so as to suppress the mischief against which it was aimed, but not as altering the common law any further than is necessary to remove that mischief."

Counsel for the plaintiff has cited the case of *Heitz v. Sayers*, 2 *W. W. Harr.* (32 *Del.*) 207, 121 *Atl.* 229, which is the only case in which our Court has attempted to interpret the section of the act now under consideration. The question in that case was the right of a married woman to make a contract, not with her husband, however, but another, and the Court very properly held that the statute gave her the right.

The distinction between that case and the one now before the Court can be readily seen as the question of the legal unity of husband and wife was in no way involved.

It is true that the trend of legislation at this time, is to re-
move all disabilities imposed upon a married woman by the com-
mon law and to make her legal status equal to that of man; in
fact when one considers that she now enjoys the equal right of
suffrage, may become his rival for public office and his competitor
in all fields of activity, whether professional or business, he is in-
clined to think that the barrier has already been completely re-
moved and there is no reason why the courts should attempt fur-
ther restriction of the statutes. But the right to sue each other
strikes at the very heart of domestic relations and its effect not
only upon the home ties, but upon society generally would be far
reaching. For these reasons the husband and wife should not be
permitted to sue each other in a court of law unless the right is
expressly granted to them by the statute under which it is claim-
ed. In the case of *Small v. Small*, 129 *Pa.* 366, 18 *Atl.* 497, suit
was brought by a wife against her husband under the following
statutory provision:

"Husband and wife shall have the same civil remedies upon contracts in
their own name and right, against all persons, for the protection and recovery
of their separate property, as unmarried persons."

The Supreme Court of Pennsylvania in passing upon the
question said:

"It is impossible to suppose that so important a branch of the subject as
the right of action between husband and wife should not have been thought of,
or being thought of should not have been granted in unequivocal terms, if
intended to be granted at all. To legislators, versed in the principles of the
common law, it would immediately suggest itself as a distinct and momentous
departure from the legal policy of centuries, which ordinary phraseology,
however general, would not commonly be understood to intend, and it is in-
conceivable that under such circumstances, it should be granted obscurely
and by implication. As said by Woodward, J., in *Ritter v. Ritter*, 31 *Pa.* 398,
'if the Legislature meant that such actions as the present should be sustained,
they had command of a very copious language in which to express their will.'"

In the case of *Keister's Adm'r v. Keister's Ex'rs*, 123 *Va.* 157,
96 *S. E.* 315, 1 *A. L. R.* 439, the Supreme Court of Appeals of
Virginia, in deciding whether a wife could sue her husband, had
this to say:

"The Legislature is presumed to have known and to have had the com-
mon law in mind in the enactment of the statute; and the statute will be

construed to read as if the common law remained unchanged (that is to say, the statute will be read along with the provisions of the common law, and the latter will be read into the statute), unless the purpose of the statute to change the common law appears from the express language of it or by necessary implication from such language."

*Section* 4 of *Chapter* 550, *Volume* 14, *Laws of Delaware,* being the married woman's act of 1873, reads as follows:

"That any married woman may prosecute and defend suits at law or in equity for the preservation and protection of her property as if unmarried, or may do it jointly with her husband, but he alone cannot maintain an action respecting his wife's property; and it shall be lawful for any married woman to make any and all manner of contracts necessary to be made with respect to her own property, and suits may be maintained on such contracts as though the party making them was a *femme sole.*"

In the case of *Forbes v. Thompson,* 2 *Penn.* 530, 47 *Atl.* 1015, an attachment *fieri facias* was issued by the plaintiff against the defendant, and one Walther, and the wife of Walther was summoned as a garnishee. It was contended the wife of Walther could not be summoned as a garnishee, as under the act of 1873, above quoted, a husband could not sue his wife and his creditor's rights were no greater than his. The opinion of the court contains these words:

"It seems not only illogical, but unwarranted by any rule or canon of statutory construction, to hold that an act passed for the benefit of married women gives the husband the right to sue his wife at law when such power is not clearly conferred by the statute in question. The act was designed, and by its title is declared to be, for the protection of women. It was not intended to operate to their disadvantage and injury; and will not be so construed as to give the husband a right to maintain an adverse and hostile action against her—which was not permitted at common law— unless the statute clearly clothes him with such power."

The case of *Masten v. Herring,* 6 *Penn.* 282, 66 *Atl.* 368, was one in which the executor of Hezekiah Masten brought suit against the administrator of Sallie A. Masten, to recover the amount claimed to be due on a bond which the said Sallie A. Masten executed and delivered to her husband, the said Hezekiah Masten. Counsel for the plaintiff relied upon that portion of the act of 1873 as amended by 16 *Del. Laws, c.* 126, which provides:

"And in any case, a married woman, above the age of twenty-one years, may give a bond, with or without a warrant of attorney, just as if she were a *femme sole.*"

The Court, after quoting from the opinion of the Court in the case of *Forbes v. Thompson*, 2 *Penn.* 530, 47 *Atl.* 1015, as above quoted, spoke as follows:

"Our opinion is that the said provision should be construed as clothing a married woman with legal authority to give a bond to another person other than her husband, but as to him she is not in that respect authorized to act as a *femme sole.*"

The last two cases mentioned clearly indicate that the tendency of this Court has been to construe statutes of this character strictly and to hold that no other rights are granted than those which are clearly expressed.

Our opinion is that it is not clearly expressed by the provisions of the statute in question, that the Legislature intended to confer upon a husband and wife the right to sue each other.

We, therefore, order that judgment be entered for the defendant, Cecelia Plotkin, on her plea in abatement.