Herman H. DUNN, Administrator of the Estate of Ferne Dunn Krebs, Deceased, Plaintiff,

v.

BEECH AIRCRAFT CORPORATION, Defendant and Third-Party Plaintiff,

v.

CONTINENTAL BANK AND TRUST COMPANY, Administrator of the Estate of Richard Krebs, Deceased, Third-Party Defendant.

Civ. A. No. 3296.

United States District Court
D. Delaware.

July 27, 1967.

Rodman Ward, Jr., Prickett, Ward, Burt & Saunders, Wilmington, Del., for defendant and third-party plaintiff.

John Biggs, III, Wilmington, Del., David C. Toomey, Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa., of counsel, for third-party defendant.

## OPINION

STEEL, District Judge.

Continental Bank and Trust Company, Administrator of the Estate of Richard Krebs, deceased, (Continental) has moved to dismiss the third-party complaint against it which Beech Aircraft Corporation, a Delaware corporation, (Beech) defendant and third-party plaintiff, has filed for contribution and/or indemnity. Jurisdiction exists by virtue of diversity of citizenshp.

The litigation arises out of an airplane crash which resulted in the death of Richard Krebs, the pilot, and his wife, Ferne Dunn Krebs, who was flying with him. The accident took place in Virginia. Both Mr. and Mrs. Krebs were, and for some time had been, residents of Pennsylvania. The plaintiff, Dunn, a resident of Pennsylvania, was appointed administrator of Mrs. Krebs' estate by the Register of Wills of Montgomery County, Pennsylvania. This action was brought by plaintiff on behalf of the survivors of Mrs. Krebs under the Act of 1855, P.L. 309, as amended, Pa.R.C.P. 2202, 12 P.S.Appendix, and on behalf of the Estate of Mrs. Krebs under the Act of 1937, P.L. 2755, as amended by the Act of April 18, 1949, P.L. 512, § 603, 20 P.S. § 320.603. The complaint alleges that the accident was caused by the negligence of the defendant acting through its agents, and was the result of a breach of warranties by defendant to Mr. Krebs who purchased the airplane from defendant.

Within ten days after the service of its answer, Beech filed a third-party complaint under Federal Rules of Civil Procedure (F.R.C.P.) 14(a) against Continental Bank and Trust Company, Administrator of the Estate of Richard Krebs, deceased, which had been appointed as such by the Register of Wills of Montgomery County, Pennsylvania. Service was effected upon Continental in Philadelphia under F.R.C.P. 4(f).

The third-party complaint alleges that the crash and damages were proximately caused by the negligence of Mr. Krebs or his agents in maintaining the aircraft or by Mr. Krebs in flying it. Judgment was asked against Continental for all sums adjudged in the main action to be due to plaintiff from Beech (indemnity), or in the alternative, that the damages be pro rated between Beech and Continental under 10 Del.C. § 601 et seq., if Beech and Mr. Krebs are determined to have been joint tort feasors (contribution). The third-party defendant, Continental, thereupon moved to dismiss the third-party complaint pursuant to F.R. C.P. 12(b) (6) for failure to state a claim upon which relief could be granted.

Continental, in its initial brief, argued that the Delaware conflicts of laws rule by which this Court is bound, Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), has recently been determined in Friday v. Smoot, 211 A.2d 594 (Del.Sup. Ct.1965). There it was held that when a tort is committed outside of Delaware, the *lex loci delecti* is controlling, which in this case is the law of Virginia. Continental concludes its argument by asserting that under Virginia law the principle of inter-spousal immunity applies and requires a dismissal of Beech's claim.

Beech in its brief argued that the principle of the *Friday* case was restricted to substantive tort law, and that the doctrine of inter-spousal immunity has a broader base and arises from policies in support of domestic relations. To support its argument that the doctrine is not strictly a principle of tort law, Beech points out that it was applied by the Court in Plotkin v. Plotkin, 2 W.W.Harr. 455, 32 Del. 455, 125 A. 455 (Super.Ct. 1924), which was an action of replevin. Accordingly, Beech contends that if a Delaware Court were confronted with the precise problem here involved, it would hold, under non-Delaware authorities which it cites, that the law of the domicile of the spouses would be the proper law to apply—in this case Pennsylvania which has refused to recognize the inter-spousal immunity rule. Puller v. Puller, 380 Pa. 219, 110 A.2d 175, 177 (1955).

After the briefs had been filed, the Superior Court of Delaware (Stiftel, P. J.) on June 5, 1967, decided Perez v. Short Line Inc. of Penn., Del., 231 A.2d 642. It arose out of a collision between an automobile and a bus which occurred in Pennsylvania. Mr. Perez, who was riding in a car driven by his wife, was injured and brought suit individually and on behalf of his son against The Short Line, Inc. of Penn., the owner and operator of the bus. The latter filed a motion under Rule 14(a) of the Superior Court for leave to bring in Mrs. Perez as a third-party defendant in order to assert a claim against her for contribution, alleging that she was either wholly or partly responsible for the accident. Both Mr. and Mrs. Perez resided in Delaware. The parties conceded that Pennsylvania law permitted a defendant to assert a claim for contribution against the spouse of the plaintiff, whereas Delaware law did not allow this to be done. The Court was confronted with the question whether Pennsylvania or Delaware law should govern. It held that the question whether a particular matter involved substance or remedy must be determined by the law of the forum, and that under Delaware law contribution was a remedial and not a substantive right. The Court held, therefore, that the inter-spousal immunity law of Delaware applied and denied defendant leave to file the third-party complaint.

The statement in *Perez* that the law of the forum must be looked to to determine whether a question involves a matter of substance or remedy had obvious reference to State Court litigation where there was a difference between the law of the forum and that of another state. The Court was not dealing with the issue whether a Federal Court in a diversity case is bound by a State Court's characterization of a matter as substantive or procedural.

■ Of course, if the *Perez* statement that contribution is a remedial right were to be binding upon this Court, then it may well be that for this reason alone the third-party complaint in its contribution aspect would have to be dismissed. Under the "substance/procedure" dichotomy of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a Federal Court sitting in a diversity case is only bound to follow the substantive law of the State in which it sits; and in Goldlawr, Inc. v. Shubert, 276 F.2d 614, 616 (3d Cir. 1960), it was stated that under the Federal common law there is no right of contribution between tort feasors.

■ The fact is, however, that a Federal Court in determining whether to apply the *Erie* doctrine and follow the law of the State where it sits is not bound by the State Court's characterization of a matter as procedural. Sampson v. Channell, 110 F.2d 754, 758, 128 A.L.R. 394 (1st Cir. 1940), cert. denied, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415. There, a car driven by plaintiff collided in Maine with a car driven by defendant's testator. Plaintiff sued in the United States District Court of Massachusetts, there being diversity of citizenship. Plaintiff requested the Court to instruct the jury that in accordance with Massachusetts law the defendant had the burden of proving contributory negligence. The Court refused and instead charged, in accordance with the law of Maine, that plaintiff had the burden of proving freedom from contributory negligence. The jury found that the plaintiff had been contributorily negligent and returned a general verdict for defendant upon which judgment was entered. Upon appeal the judgment was reversed upon the ground that the charge requested by plaintiff should have been given. The Court of Appeals said that the first question was whether the Federal Court, in a diversity case, was required to follow applicable state law on the question of burden of proof, and if it were, a second question was to be answered: was the state law to be applied that of Massachusetts or Maine. As to the first question the Court held that although the Massachusetts State Court had characterized the burden of proof rule as procedural, the Federal Court

nevertheless should treat it as substantive for purposes of the *Erie* doctrine, since the rule was "outcome determinative". The Court said at 758:

"Surely the question whether a particular subject-matter * * * is a matter of substantive law governed by the doctrine of the Tompkins case, cannot be foreclosed by the label given to the subject-matter by the state courts."

Having concluded that the Federal Court should follow applicable state law on burden of proof, the Court then addressed itself to the second question: what was the applicable state law under the Massachusetts conflict of laws rule. The Court reasoned that inasmuch as the Massachusetts State Court had characterized burden of proof as procedural, the State Court would have applied its own burden of proof law and not that of Maine, and therefore the Federal Court should have done so. The Court recognized at 762 the "surface incongruity" of holding the Massachusetts burden of proof rule to be substantive in its *Erie* relevance while at the same time holding it to be procedural in its choice of law significance.

The Sampson v. Channell analysis has much to commend it.[1] It provides a sound basis upon which this Court may proceed in its discussion of the closely analogous problem before it.

Although *Perez* and other Delaware authorities have characterized the right to contribution as remedial in a conflict of laws context in the Delaware State Court, this Court is not required to so consider it in determining whether *Erie* requires this Court to follow State rather than Federal law. Actually, the applicability or non-applicability of the spousal immunity rule to a cross claim for contribution is "outcome determinative" as between the parties to the cross claim. For this reason *Erie* requires this Court to follow applicable State law.

Under the *Klaxon* case, supra, in determining what is applicable state law, this Court is governed by the Delaware conflict of laws rule. *Perez*, and prior authorities therein relied upon, have held that the right to contribution is remedial and not substantive in a conflict of laws context in the Delaware State Court. *Perez* held, therefore, that the *lex fori* and not the *lex loci delecti* controlled the question whether a cross action for contribution would lie by the defendant against the spouse of the plaintiff. The rationale of *Perez* in dealing with the state choice of law problem is identical with the analysis in Sampson v. Channell, supra.

Beech argues, however, that the conflict of laws question decided in *Perez* is not controlling since in *Perez* both spouses were Delaware residents, whereas in the case at bar the spouses and their administrators were and are all Pennsylvania residents. In these latter circumstances, Beech asserts that substantial recent authorities hold that the availability of the inter-spousal immunity defense should be determined by the law of the spouses' domicile. This is upon the theory that the domiciliary state has the primary concern about marital relations of its residents, and that another state in which an action has been fortuitously brought has no concern with that relationship.

Beech's argument presupposes that although the Delaware Courts have held that the right to contribution is remedial and hence requires that Delaware law be followed in determining whether relief should be granted, those Courts would nonetheless hold that contribution is a substantive right if the spouses involved were nonresidents of Delaware. Considering the varying circumstances in which the right to contribution has been characterized as remedial, Halifax Chick Express v. Young, 11 Terry 596, 50 Del. 596, 137 A.2d 743, 745 (Sup.Ct. 1958); Lutz v. Boas, 40 Del.Ch. 130, 176 A.2d 853, 857 (1961), and Perez v. Short

---

[1]. The opinion of Judge Magruder in Sampson v. Channell has been referred to as "very learned". Wright v. Carter Products, Inc., 244 F.2d 53, 60 (2d Cir. 1957).

Line Inc. of Penn., supra, it is to be doubted that this would occur; and unless it did occur there would be no basis for the Delaware Court following the law of any state except Delaware.

But assuming that the Delaware Court would examine the choice of law problem anew if a case should come before it where, as here, both spouses were non-residents, it is believed that Delaware would still choose to follow the *lex fori* in determining the liability of the plaintiff's spouse. Restatement, Second, Conflict of Laws, Tentative Draft No. 9, § 390g relating to "Intra-Family Immunity" provides:

> "In accordance with the rule of § 379, whether one member of a family is immune from tort liability to another member of the family is determined by the local law of the state of their domicil."

In Comment a. relating to the rationale of § 390g it is stated that the section is an application of the rule of § 379. This latter section states that in determining the choice of substantive law applicable to rights and liabilities in tort, the local law of the state which has the most significant relationship with the occurrence and with the parties is determinative. This principle, however, was rejected in Friday v. Smoot, supra, in favor of applying the *lex loci delecti*. Since § 390g is based upon the rationale of a torts conflict of laws principle which the Supreme Court of Delaware has recently rejected, it seems unlikely that a Delaware Court would follow § 390g or the cases cited by Beech based upon the same principle.

Furthermore, in all of the cases which Beech has cited to support its view that the law of the domicile of the spouses is controlling in a case such as the instant one, the action was brought directly by one spouse against the other. In none did the question arise in connection with the claim of a third-party for indemnity or contribution against the spouse of the plaintiff.[2] This has been recognized as a vital point of distinction. See § 390g, Comment c. This relates to actions which are not directly between members of the same family—which is the situation at bar. It provides in part:

> "The rule of this Section does not apply when the action is not between members of the same family. So, the rule is inapplicable when an injured spouse brings suit against a third person, and he in turn seeks contribution from the other spouse on the ground that the latter was partly responsible for the injury. In this situation the state of the family domicil does not have the same interest in determining the question of immunity as it does when the suit is between members of the family, unless, perhaps, the third person is also domiciled in that state."

In view of what has been said, it is reasonable to conclude that if the present case were before the Delaware Supreme Court it would apply the *lex fori* to determine whether the cross claim can be maintained.

■ The law in Delaware makes it clear that Continental, as the Administrator of the Estate of Richard Krebs, the deceased spouse of the plaintiff, is immune to a third-party claim asserted against it by the defendant. This is the composite effect of Ferguson v. Davis, 9 Terry 299, 48 Del. 299, 102 A. 2d 707, 708 (Super.Ct.1954), and Saunders v. Hill, 202 A.2d 807 (Del.Sup.Ct. 1964). See also, Perez v. The Short Line Inc. of Penn., previously discussed, supra. This, then, is the law which this Court must follow.

Another approach leads to the same conclusion. The capacity of a party to be sued in a Federal Court is determined by F.R.C.P. 17(b). By the mandate of Rule 17(b) this Court must look to the law of Delaware to determine whether Continental, as the Administrator of the Estate of Richard Krebs, can be sued.

---

2. In all of the cited cases the spouses were domiciled in the forum state and were alive when the suit was brought.

The Delaware law makes it clear that it can not be.

In view of this conclusion, it is unnecessary to consider the broader question whether a foreign corporate administrator which is incorporated outside of Delaware and has not been qualified in or been served in Delaware, but has been served outside of Delaware under F.R.C.P. 4(f), is subject to suit as a third-party defendant.[3] In this connection see Beck v. Lund's Fishery, Inc., 3 Story 45, 53 Del. 45, 164 A.2d 583, 588 (Sup.Ct. 1960); Davis v. Smith, 125 F.Supp. 134 (D.Del.1954); Callwood v. Virgin Islands National Bank, 221 F.2d 770, 778 (3d Cir. 1955), wherein Restatement, Conflict of Laws §§ 512 and 513 were referred to with approval. But see Giampalo v. Taylor, 335 Pa. 121, 6 A.2d 499, 502 (1939), and Goodrich, Conflict of Laws, § 190, p. 367 (4th ed. 1964).

The motion to dismiss the third-party complaint will be granted.

---

**3.** The record does not reveal the place of incorporation of Continental. A telephone inquiry by the Court to the Secretary of State's office on July 6, 1967, disclosed that Continental was not then incorporated or qualified to do business in Delaware. The service which was made upon Continental in Philadelphia suggests that Beech realized that Continental could not be sued in Delaware.