**Rachel P. HUDSON, Plaintiff,**

v.

**Louis C. HUDSON, Defendant.**

Superior Court of Delaware, Sussex County.

Submitted: Jan. 30, 1987.
Decided: April 28, 1987.

Robert C. Wolhar, Jr. of Wolhar & Gill, Georgetown, for plaintiff.

Robert B. Young of Young & Sherlock, Dover, for defendant.

## OPINION

CHANDLER, Judge.

This is the Court's decision on defendant Louis C. Hudson's motion for summary judgment. The underlying suit is a personal injury action, filed by the plaintiff Rachel P. Hudson on May 27, 1986, in which she alleges that the defendant, *inter alia,* intentionally drove the vehicle in which she was a passenger into a railroad sign in order to harm her and that, realizing she was injured, defendant intentionally caused further serious harm by moving her, thereafter refusing to summon medical help because he wanted to watch her die. In his answer defendant generally denies the allegations of the complaint and asserts the affirmative defense of inter-spousal tort immunity. In support of his motion for summary judgment, defendant has filed an affidavit stating that at the time of the alleged incident plaintiff and defendant were married. Defendant's motion is premised solely on his argument that plaintiff's tort claim must fail as it is barred by the doctrine of inter-spousal tort immunity.

Plaintiff and defendant were married in 1975. On April 12, 1986, while defendant was driving a pick-up truck, the parties became involved in a dispute and the alleged incident occurred. Thereafter the plaintiff was hospitalized for two weeks with a broken back which required the insertion of steel rods for stabilization. On May 16, 1986, plaintiff filed a petition for divorce in the Family Court in and for Sussex County. Her petition alleged, *inter alia,* that the parties had separated on April 12, 1986 and that the grounds for the divorce were that the defendant had attempted to kill and/or seriously injure her. On August 11, 1986, a Sussex County grand jury indicted the defendant for assault in the first degree as a result of the April 12 incident. On October 28, 1986, defendant was tried in Superior Court in and for Sussex County by a jury of twelve and found guilty as charged. While defendant's motion was pending, this Court was notified that the plaintiff had been granted a divorce from the defendant on December 29, 1986.

On a motion for summary judgment under Superior Court Civil Rule 56 the moving party has the burden of showing that there are no material issues of fact present. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). Furthermore, the facts must be viewed in a light favorable to the nonmoving party. *Oliver B. Cannon Sons v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322 (1973). Accordingly, the moving party must show that, on unquestioned facts, he is entitled to judgment as a matter of law. *Id.* at 325.

Conceding for the purpose of his motion the truth of the plaintiff's allegations, the defendant has nonetheless argued that as a matter of law he is entitled to summary judgment. He argues that since the parties were husband and wife on the date of the alleged incident and at the time the complaint was filed, the doctrine of inter-spousal immunity, most recently affirmed by the Delaware Supreme Court in *Alfree v. Alfree,* Del.Supr., 410 A.2d 161 (1979), *appeal dismissed,* 446 U.S. 931, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980), must apply to this case.

Plaintiff has argued in opposition to the motion that two factors distinguish the present case from *Alfree.* First, unlike the parties in *Alfree* who were still married, although separated, the plaintiff has filed

for divorce and upon the divorce of the litigants the doctrine of spousal immunity should no longer bar her suit. Second, she contends that the doctrine of immunity does not apply in a case of intentional tort as is alleged here.

In *Alfree* the Supreme Court held en banc that one spouse may not sue the other at law, thus reaffirming the common law rule recognized by the Superior Court in *Plotkin v. Plotkin*, Del.Super., 125 A. 455 (1924) and by other courts of this State since 1924. *Alfree*, 410 A.2d at 162. The common law rule arose from the concept of the legal unity of husband and wife, *i.e.*, that upon marriage a wife's legal identity merged into that of her husband. *See Plotkin*, 125 A. at 456. Accordingly, the wife could not contract in her own name, own property, sue or be sued. *Id.* Throughout the nineteenth and twentieth centuries, however, the tendency of modern legislation has been to remove the disabilities of a married woman through various Married Women's Acts. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 122 (5th ed. 1984). These acts were designed to secure to a married woman a separate legal identity with her own rights in property and her own capacity to sue and be sued. *Id.* However, these acts were generally held not to destroy the spousal immunity when it came to personal torts. *Id.* Although the concept of the legal unity of the spouses had been eroded by the statutes, courts found two major new arguments in favor of the immunity. *Id.* The first argument was that suits between spouses would be fictitious and fraudulent. *See Rubalcava v. Gisseman*, Utah Supr., 14 Utah 2d 344, 384 P.2d 389 (1963) (to allow interspousal actions encourages raids on insurance companies through unmeritorious claims). The second was that spousal actions would destroy the peace and harmony of the home. *See Alfree*, 410 A.2d at 162 ("[T]he right [of spouses] to sue each other strikes at the very heart of domestic relations and its effect not only upon the home ties, but upon society generally would be far reaching.") (quoting *Plotkin*, 125 A. at 457).

This State is one of a minority of jurisdictions in which the rule has survived in full force. *See Boblitz v. Boblitz*, Md.App., 296 Md. 242, 462 A.2d 506, 511 (1983) ("Twelve states continue to recognize the doctrine: Delaware, Florida, Georgia, Hawaii, Kansas, Mississippi, Missouri, Montana, Ohio, Oregon, Tennessee, and Wyoming.") In *Alfree*, a case which involved a personal injury action by a wife against her husband arising out of an automobile accident, the Supreme Court reexamined its position recognizing the doctrine and continued to support it despite the modern, widespread criticism of the rationale of the doctrine. 410 A.2d at 162.

> But, nonetheless, we think that, in addition to its time-honored recognition in this State, it retains sufficient merit to warrant continued adherence by this Court for two sets of reasons.
>
> First as to tort law, elimination of the doctrine could: (1) open up the possibility of various tort actions such as assault and intentional infliction of emotional harm which could go to the heart of public policy and legislative policy relating to marriage; (2) make many routine automobile cases by way of contribution an involuntary suit of one spouse against another; (3) make common automobile negligence issues, including assumption of risk and guest statute questions, ones of aggravated accusation by one spouse against another; and (4) affect legislative policy in the no-fault insurance field.
>
> Second, as to property law, we note that marriage has many protective attributes not available to others including the duty to support, the right to inherit, and the right to hold property free from assault by a spouse's creditors as tenants by the entirety. Thus, the public policy relating to the marriage status is more complex than treatment of the interspousal immunity doctrine in isolation would suggest.

*Id.* at 162. After determining that the problem was more appropriate for legislative solution than for judicial determination, the Court commended to the General Assembly the problem of reviewing the

rights of a spouse in the position of the plaintiff in this day and age. *Id.* at 163.

In this case, however, there is an important factual distinction from *Alfree*. The parties have divorced and their marital status is ended. The rule that one spouse cannot sue the other and the various rationales behind the rule no longer have any applicability. Accordingly, I conclude that the termination of the marriage removes the bar against interspousal litigation and the plaintiff now has a right to pursue her cause of action. *See Sanchez v. Olivarez,* N.J.Super.Law Div., 94 N.J.Super. 61, 226 A.2d 752 (1967).

This holding is consistent with prior Delaware cases concerning the interspousal immunity doctrine, none of which involved parties who were divorced. *See Alfree,* 410 A.2d at 161; *Short Line, Inc. of Penn. v. Perez,* Del.Supr., 238 A.2d 341 (1968); *Fields v. Synthetic Ropes, Inc.,* Del.Supr., 215 A.2d 427 (1965); *Saunders v. Hill,* Del.Supr., 202 A.2d 807 (1964); *Owens v. Owens,* Del.Supr., 149 A.2d 320 (1959); *McElroy v. McElroy,* Del.Ch., 256 A.2d 763 (1969); *du Pont v. du Pont,* Del.Ch., 98 A.2d 493 (1953), *rev'd,* Del.Supr., 103 A.2d 234 (1954); *Peters v. Peters,* Del.Ch., 169 A. 298 (1933); *Plotkin v. Plotkin,* Del.Super., 125 A. 455 (1924). I was initially troubled, however, by the reasoning in *Saunders v. Hill,* 202 A.2d at 807. In that case a wife had been a passenger in a car driven by her husband. As a result of a collision with another car, both husband and wife had been killed. The administrator of the wife's estate instituted a personal injury action against the estate of her late husband under the Wrongful Death Statute, 10 *Del.C.* § 3704(b), and the Delaware Survival Statute, 10 *Del.C.* § 3701. The issue in *Saunders* was whether or not an exception to the immunity doctrine should be recognized in actions brought under the Wrongful Death Statute. *Id.* at 808.

The Supreme Court in *Saunders* reasoned that the right of action created by the statute was dependent upon the right of the person injured, had he not died as a result of his injuries, to maintain an action for personal injuries. *Id.* at 809. The plaintiff had argued that the administrator or executor was bound by the factual conduct of the decedent rather than by any personal relationship giving rise to any immunity from suit. *Id.* The Court dismissed this argument as predicated on the assumption that the common law immunity from suit recognized the existence of a cause of action by the wife, but merely prevented the wife from vindicating such right. In the Supreme Court's view, at common law the husband was not merely immune from suit by the wife for personal injuries; the cause of action never arose because of the unity of husband and wife. *Id.* at 808. Since the immunity rule would have prevented the wife from maintaining the action had she survived and since there was no express language in the statute that the Legislature intended to abrogate the common law rule, the Court held that the Wrongful Death Statute did not create an exception to the normal immunity from suit between husband and wife. *Id.* at 810.

The dicta in *Saunders* that a cause of action never arose in tort between husband and wife was expressly rejected by the Supreme Court in *Fields v. Synthetic Ropes, Inc.,* 215 A.2d at 432. In deciding that a wife might sue her husband's employer for the husband's negligence under the doctrine of *respondeat superior,* the Court held that the husband may commit a tort upon the person of his wife even though she is given no legal redress for it against him. *Id.*

> [W]e think in principle that there is no reason in law that a husband cannot commit a tort upon the person of his wife. At the same time, however, the wife is remediless, for at common law and in this State she may not sue her husband in a court of law. Therefore, while she has a "cause of action," i.e., her husband's tort, at the same time she has no "right of action," i.e., the ability to enforce it by bringing suit, since the law gives the husband the defense of immunity in an action brought by his wife against him.

*Id.*

In this case the plaintiff's cause of action arose during her marriage to the

defendant when she had no right of action. She commenced litigation and in the interim was granted a divorce. The common law rule of immunity derives from the legal unity of husband and wife. The public policy reasons for its continued adherence by the courts in Delaware relate to the impact of litigation on the marriage and on the spouses' respective rights and duties. *See Alfree,* 410 A.2d at 162. Where there is no marital status, the rule and the public policy have no further factual basis, there being no marriage, rights or duties to protect.[1] *See Sanchez v. Olivarez,* 226 A.2d at 754. The crucial criterion, therefore, is the marital status of the parties. *See Koplik v. C.P. Trucking Corp.,* N.J.Supr., 27 N.J. 1, 141 A.2d 34, 37 (1958). The issue of status, however, is not dependent upon the relationship of the parties at the time the action accrued or when the action was commenced, but rather is important at the point in time when their rights are judicially determined. *Sanchez,* 226 A.2d at 754. I am of the opinion, therefore, that the termination of a marriage by divorce prior to judicial determination removes the bar of spousal immunity that prevented a spouse from enforcing her cause of action against the other.

■ Plaintiff has submitted a copy of her divorce decree as evidence that she and the defendant are now divorced. In view of the fact that the parties are no longer husband and wife, defendant's argument for interspousal immunity fails. There being material questions of fact present, the defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

1. The defendant's argument that further disharmony would be fostered in the home by making divorce a prerequisite to maintaining an action in tort is not persuasive. The laws of this State authorize divorce upon certain recognized statutory grounds. *See* 13 *Del.C.* § 1505. There is already sufficient disharmony in a home where one spouse attempts to hurt or kill the other and is thereby criminally prosecuted. The threat of civil litigation will not significantly worsen the situation. However, to deprive permanently the former spouse of a remedy for tortious conduct suffered during a marriage could effect serious hardship.