**AETNA CASUALTY & SURETY COMPANY, Plaintiff–Appellee,**

v.

**Wallace SHEFT, Special Administrator of the Estate of Roy H. Fitzgerald, aka Rock Hudson, Defendant–Appellant.**

No. 91–55035.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 19, 1992.*

Decided March 31, 1993.

Peter M. Fonda, Fonda & Garrard, Los Angeles, CA, for defendant-appellant.

Roy G. Weatherup, Haight, Brown & Bonesteel, Santa Monica, CA, for plaintiff-appellee.

Before: TANG and HALL, Circuit Judges, and WALKER, District Judge.**

CYNTHIA HOLCOMB HALL, Circuit Judge:

Wallace Sheft, special administrator of the estate of Roy Fitzgerald, aka Rock Hudson ("the Estate"), appeals from an order granting summary judgment in favor of Aetna Casualty & Surety Company ("Aetna"), in its declaratory judgment action. Aetna sought a declaration that it is not required to indemnify or defend the Estate for a judgment against it in a state court action brought by Marc Christian, Hudson's lover. In the state court action, Christian won a jury verdict for intentional misrepresentation, intentional concealment, and intentional infliction of emotional distress based on his allegation that Hudson,

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

** The Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation.

knowing he had AIDS, intentionally misrepresented his condition to induce Christian to engage in high risk sex.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction over this timely appeal under Federal Rule of Civil Procedure 54(b), and 28 U.S.C. § 1291. We affirm.

I.

On October 31, 1984, Aetna issued a homeowner's insurance policy to Rock Hudson. The policy provided coverage to Hudson, *inter alia,* "if a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies...." The Aetna policy also contained exclusionary language stating that the policy did not apply to injury or property damage "which is expected or intended by the insured."

Christian met Rock Hudson in October 1982, and engaged in a sexual relationship with him from April 1983 to February 1985. On June 8, 1984, Hudson was conclusively diagnosed as having AIDS. In July 1985, while Hudson was in Europe, it was publicly announced that he had AIDS. Several seconds after learning of the public announcement, Christian blacked out from fear. He also lost sleep, had nightmares, sweated excessively, lost weight, became anxious and short tempered, and occasionally vomited as a result of learning that Hudson had AIDS.

On February 15, 1989, the jury in the state court action, *Christian v. Sheft,* No. C 574153 (Cal.Super.Ct. February 17, 1989), rendered a verdict in favor of Christian and against the Estate. In awarding $14,500,000 in compensatory damages to Christian, the jury answered 37 separate questions contained in a special verdict form.

The jury found that: 1) at the time Christian and Hudson were engaging in "high risk sex," Hudson knew he had AIDS and concealed that information from Christian; 2) at the time Christian and Hudson were engaging in high risk sex, Hudson affirmatively misrepresented his physical condition to Christian; 3) Hudson's misrepresenta-

tions and concealment were made with the intent to induce Christian to continue engaging in "high risk sex" with Hudson; 4) Christian reasonably relied upon Hudson's misrepresentations and concealment and, as a result, suffered increased emotional distress; 5) Hudson's conduct was outrageous; and 6) Hudson's outrageous acts were done by Hudson with either intent to cause Christian emotional distress, or with reckless disregard of the probability of causing emotional distress to Christian.

On March 9, 1989, Aetna filed a complaint in the district court seeking a declaration that it had no obligation to provide coverage for the verdict entered in the underlying state action. The complaint contained two claims, the first for declaratory relief premised upon the terms and conditions of the policy, and the second for a declaration that, pursuant to California's public policy as enunciated in California Insurance Code section 533 ("section 533"), Aetna had no obligation to defend or to indemnify the Estate.

On October 31, 1990, the district court entered summary judgment in favor of Aetna. 756 F.Supp. 449. The district court found that Aetna had no obligation to defend or to indemnify the Estate with respect Christian's claims against the Estate. It found that both section 533 and the insurance policy precluded coverage.

II.

We review the district court's grant of summary judgment and its interpretation of state law de novo. *State Farm Fire & Casualty Co. v. Estate of Jenner,* 874 F.2d 604, 606 (9th Cir.1989). Where there are no contested issues of fact, we need only decide whether the district court correctly applied the substantive law. *Moorhead v. United States,* 774 F.2d 936, 940 (9th Cir. 1985).

III.

This case calls upon us to interpret state law as best we can. In so doing, we must determine how we believe the highest court of California would decide this case if it

were presented for decision. *Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.), *cert. dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

California Insurance Code section 533 provides:

> An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.

California courts have consistently held that "[s]ection 533 of the Insurance Code is a part of every insurance contract and is equivalent to an exclusionary clause in the contract itself." *United States Fidelity & Guar. Co. v. American Employers' Ins. Co.*, 159 Cal.App.3d 277, 205 Cal.Rptr. 460, 464 (1984) (quoting *Evans v. Pacific Indemnity Co.*, 49 Cal.App.3d 537, 122 Cal. Rptr. 680, 682 (1975)). "Section 533 ... reflects the very sound and long standing public policy ... which disapproves of contracts which directly or indirectly exempt anyone from personal responsibility for his own wilful injury to another." *Id.* (quoting *Evans*, 122 Cal.Rptr. at 682).

In *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 297, 587 P.2d 1098, 1110 (1978), the California Supreme Court held that "even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.'" (Quoting *Walters v. American Ins. Co.*, 185 Cal.App.2d 776, 8 Cal.Rptr. 665, 670 (1960).) The Estate, relying on *Clemmer*, argues that coverage is mandated unless Aetna can prove that Hudson acted with a "preconceived design to inflict injury," that is, that Hudson specifically intended that Christian contract AIDS or that he intended to inflict emotional distress on Christian.

After the decision of the district court in this case, the California Supreme Court dealt again with the "preconceived design to inflict injury" requirement of *Clemmer*,

and stated that the requirement is relevant only to the question whether the insured had the mental capacity to intend to commit the wrongful act. *J.C. Penney Casualty Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 71, 804 P.2d 689, 696, *cert. denied*, —— U.S. ——, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991). The *J.C. Penney* court held that "[p]roperly understood, *Clemmer* ... do[es] not support defendants' view," *id.*, 278 Cal.Rptr. at 73, 804 P.2d at 698, that "coverage applies unless the insured acted with a subjective intent to injure." *Id.* at 72, 804 P.2d at 697.

*J.C. Penney* arose from the sexual molestation of a five year-old girl by the insured. The court held that "insurers are not required to indemnify their insureds for damages caused by an insured's sexual molestation of a child. Insurance Code section 533 precludes coverage." *Id.* at 65, 804 P.2d at 690. The court found that

> "[b]ecause the wrongful *act* of child molestation is itself the *harm*, section 533 does not require a showing of the insured's subjective intent to harm. Likewise, *Clemmer* does not require a showing by the insurer of its insured's "preconceived design to inflict harm" when the insured seeks coverage for an intentional and wrongful act if the harm is inherent in the act itself. Section 533 precludes coverage in this case because child molestation is *always* intentional, it is *always* wrongful, and it is *always* harmful. Except in the present case, every Court of Appeal to consider the question has also concluded that section 533 precludes coverage for molestation."

*Id.* at 73, 804 P.2d at 698 (emphasis in original).

In light of *J.C. Penney*, a state court of appeals has stated that in delineating the exclusion under section 533 "[t]he emphasis is on the wrongfulness of the act committed by the insured, not on the insured's subjective expectation of injury." *Fire Ins. Exchange v. Altieri*, 235 Cal.App.3d 1352, 1 Cal.Rptr.2d 360, 364 (1991).[1] By

---

1. The Estate argues that Aetna attempts to expand the narrow holding of *J.C. Penney*. The *J.C. Penney* court emphasized that "[t]he only

wrongdoing we address is the sexual molestation of a child. Whether other types of wrongdoing are also excluded from coverage as a

rendering the insured's motive or intent irrelevant, these cases appear to have extended the statutory exclusion of section 533 beyond its express terms to embrace acts which the California courts deem to be inherently harmful. *See Id.,* 1 Cal.Rptr.2d at 365; *J.C. Penney,* 278 Cal.Rptr. at 73, 804 P.2d at 698. Cases decided after *J.C. Penney* shift the inquiry from the insured's subjective intent to harm to the inherent harmfulness of the insured's act. *See All-state Ins. Co. v. Tankovich,* 776 F.Supp. 1394, 1398 (N.D.Cal.1991) (coverage under homeowner's policy precluded for racially motivated hate crimes); *State Farm Fire & Casualty Co. v. Ezrin,* 764 F.Supp. 153, 156 (N.D.Cal.1991) (coverage under parents' homeowner's policy precluded for non-consensual sexual assault by son at his college fraternity); *Altieri,* 1 Cal.Rptr.2d at 365 (coverage under parents' homeowner's policy precluded for assault committed by their teenager against a schoolmate).

■ Faithfully applying the law of California, as we must, the issue becomes not whether Hudson had a preconceived design to inflict harm upon Christian, but whether Hudson's act in affirmatively misrepresenting that he did not have AIDS with the intent to induce Christian to engage in high risk sex would be deemed inherently harmful by the California Supreme Court. California law is unsettled on this issue. When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case. *Molsbergen,* 757 F.2d at 1020.

The Estate contends that Hudson's misrepresentation was not inherently harmful. It bases this contention on four arguments: 1) the underlying case did not concern an action to recover for transmittal of the AIDS virus, but only to recover for the increased fear of AIDS; 2) Christian and Hudson had engaged in consensual anal sex on hundreds of occasions prior to Hudson learning that he had AIDS; 3) Christian has not tested positive for AIDS; and 4) Hudson was neither charged with nor found guilty of a crime.

■ Based on its analysis in *J.C. Penney,* which involved another emotionally-charged sexual act, we believe that the California Supreme Court would be impressed by the seriousness and deadliness of AIDS and, therefore, inclined to declare that Hudson's conduct was inherently harmful. It is undisputed that Hudson knew that he was infected with the AIDS virus, and that he intentionally misrepresented and concealed his condition with the intent to induce Christian to engage in high risk sex over a period of nearly eight months. Hudson put Christian's health in jeopardy during an eight month period by willfully exposing Christian to the deadly AIDS virus. Finally, as a result of Hudson's misrepresentation, Christian suffered severe emotional distress.[2] We therefore believe the California Supreme Court would reject the first three of the Estate's arguments and hold that Hudson's knowing exposure of Christian to a deadly disease was inherently harmful.

Contrary to the Estate's assertion, courts applying California law have precluded coverage under section 533 even in the ab-

matter of law by section 533 is not before us." *J.C. Penney,* 278 Cal.Rptr. at 75, 804 P.2d at 700 (footnote omitted). In *Altieri,* the California Court of Appeal rejected the Estate's argument. The court stated:

Although the court in *J.C. Penney* took great pains to limit its decision to child molest[ation] cases, its statutory construction of Insurance Code section 533 and its explication of the meaning of the phrase " 'preconceived design to inflict injury' " in *Clemmer* is relevant, and indeed binding, in other contexts. *Altieri,* 1 Cal.Rptr.2d at 363 (footnotes omitted). Bearing in mind that we must determine how the California Supreme Court would decide this

case, the *J.C. Penney* decision provides a persuasive explanation of *Clemmer,* which we will follow.

**2.** The Estate contends that because the jury in the underlying state court action found by special verdict that Hudson acted with either the intent to cause Christian emotional distress, or with reckless disregard of the probability of causing emotional distress, section 533 does not apply. The Estate contends that this indicates that the jury determined that Hudson's conduct was as likely "reckless" as it was "intentional." As the Estate failed to make this argument below, we do not consider it.

sence of a felony conviction. *See State Farm Fire & Casualty Co. v. Huie*, 666 F.Supp. 1402, 1405 (N.D.Cal.1987), *aff'd*, 849 F.2d 1218 (9th Cir.1988); *Altieri*, 1 Cal.Rptr.2d at 365. In addition, the Estate's suggestion that Christian consented to the act producing his injuries is irrelevant. While Christian consented to have sex, he did not consent to be intentionally exposed to AIDS. *See Kathleen K. v. Robert B.*, 150 Cal.App.3d 992, 198 Cal.Rptr. 273, 277 (1984) (any consent to sexual intercourse is vitiated by one partner's fraudulent concealment of risk of infection with venereal disease).

Following the reasoning of the above cases, we hold that Hudson's intentional misrepresentation that he did not have AIDS in order to induce Christian to engage in high risk sex would be held by the California Supreme Court to be inherently harmful conduct. Accordingly, under *J.C. Penney*, section 533 precludes coverage as a matter of law.[3] The district court's summary judgment in favor of Aetna is affirmed.

AFFIRMED.

---

**3.** As we have determined that coverage is precluded as a matter of law under section 533, we need not decide whether coverage is also precluded under the express terms of the policy. In addition, because the parties do not distinguish between an insurer's duty to defend and its duty to indemnify, *cf. St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*, 603 F.2d 780, 786 (9th Cir.1979), we do not consider the possibility that the district court may have erred in holding that Aetna had no duty to defend even while the court correctly concluded that the insurer owed no duty to indemnify.