884 P.2d 199

Betty Ann LUCERO, a single woman; Ida Marie Valdez, a minor, by and through her mother and next friend, Betty Ann Lucero, Plaintiffs–Appellants,

v.

Lawrence VALDEZ, a single man, Defendant–Appellee.

No. 1 CA–CV 90–662.

Court of Appeals of Arizona, Division 1, Department E.

April 14, 1994.

Review Denied Nov. 29, 1994.*

* Martone, J., of the Supreme Court, voted to grant the petition for review.

314

Harris & Palumbo, P.C. by John David Harris, Kevin W. Keenan, Phoenix, for plaintiffs-appellants.

Mitten, Goodwin & Raup, by Donald F. Froeb, Brian Michael Goodwin, Steven P. Kramer, Phoenix, for defendant-appellee.

## OPINION

FIDEL, Presiding Judge.

The parties are Utah residents. Plaintiff brought this tort claim against her husband in the Superior Court of Arizona for damages sustained in a single vehicle accident that occurred while they were traveling through Arizona from their Utah home. The parties married between the accident and the time plaintiff filed suit. The trial court granted defendant's motion for summary judgment, holding that plaintiff's claim was barred by Utah's law of interspousal immunity.

Arizona abrogated the interspousal immunity doctrine in 1982. On a question of intrafamily immunity, however, the law of the state of domicile, if ascertainable, takes precedence over the law of the state where the tort occurred. The dilemma in this case is that the Utah Supreme Court at least partially abrogated Utah's law of interspousal immunity in 1980 but has chosen to leave the extent of abrogation unsettled since that time. The issues, therefore, on appeal are whether the trial court correctly interpreted

Utah law, whether Utah law is indeed ascertainable, and whether the trial court instead should have applied Arizona law.

## I. CHOICE OF LAW PRINCIPLES

■ Arizona courts are guided in choice of law questions by the Restatement of Conflict of Laws. *Bates v. Superior Ct.*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988) (citing *Schwartz v. Schwartz*, 103 Ariz. 562, 565, 447 P.2d 254, 257 (1968)). The Restatement provides that, in a tort case, the law of the state with "the most significant relationship to the occurrence and the parties" must determine their rights and liabilities. Restatement (Second) of Conflict of Laws § 145(2) (1971) [hereinafter Restatement].

■ Section 6(2) of the Restatement lists general factors that help to identify the state with the most significant relationship to the action and the parties:

   (a) the needs of the interstate and international systems,

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   (e) the basic policies underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2).

■ In further guidance, section 145(2) lists contacts to be considered when applying the principles of section 6 to issues of tort law:

   (a) the place where the injury occurred,

   (b) the place where the conduct causing the injury occurred,

   (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

   (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

■ Among the contacts listed in section 145(2), the most significant to a question of interspousal immunity is not the place where injury occurred, but rather the spouses' place of domicile. *See Schwartz v. Schwartz*, 103 Ariz. 562, 566, 447 P.2d 254, 258 (1968). This is because "the state of the family domicile ... has the primary responsibility for establishing and regulating the incidents of the family relationship...." *Id.* at 564, 447 P.2d at 256 (quoting *Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218, 223 (1955)); *see also* Restatement § 169(2) (in questions of intrafamily immunity, the "applicable law will usually be the local law of the state of the parties' domicil."). Accordingly, because Utah, the domiciliary state, is the state of "most significant relationship," we must attempt to determine and apply its law of interspousal immunity. In this case, however, a significant question arises concerning the "ease in the determination and application" of Utah law. *See* Restatement § 6(2)(g).

## II. INTERSPOUSAL IMMUNITY IN UTAH LAW

Our examination of Utah law begins with *Taylor v. Patten*, 2 Utah 2d 404, 275 P.2d 696 (1954). There, by a 3–2 margin, the Utah Supreme Court reinstated a wife's intentional tort claim against her husband. The court considered whether interspousal immunity was compatible with Utah statutes that enable wives to sue and be sued, enforce liabilities, and take actions to protect their rights "as if unmarried." *Id.*, 275 P.2d at 697 (citing Utah Code Ann. ("U.C.A.") §§ 78–11–1, 30–2–2, and 30–2–4 (1953)). In the lead opinion, two members of the majority concluded:

> From the foregoing it is clear that the legislature intended to establish the separate identity of the husband and wife in all property and personal rights the same as if they were not married. Giving these statutes a liberal construction to effect their objects and in the interest of justice requires us to hold that a wife can sue and be sued the same as if she were unmarried, even for the recovery of damages from her husband for intentional personal injury.

*Id.*, 275 P.2d at 698.

The third member of the majority limited his concurrence to the facts—that the tort occurred while the parties' divorce action was

pending but unconcluded—and reserved judgment "as to the more comprehensive proposition that such a suit could be maintained at any time during the marriage relation." *Id.*, 275 P.2d at 699 (Crockett, J., concurring).

Nine years later, in *Rubalcava v. Gisseman*, 14 Utah 2d 344, 384 P.2d 389 (1963), a 4–1 decision written by Judge Crockett, who wrote the special concurrence in *Taylor*, the Utah Supreme Court overruled *Taylor*[1] and held that a wife could not sue her husband for a tort arising during their marriage. The majority acknowledged, though with express reluctance, that "the idea that the husband is the master of the house"—an historic element of interspousal immunity—retained only "minimal" persuasive force. *Id.* at 391.[2] Yet public policy continued to favor interspousal tort immunity, according to the majority, to prevent spouses from bringing collusive suits to collect from their insurers. *Id.* The majority found no impediment to this policy in the statutes discussed in *Taylor v. Patten*. Rather, the majority concluded, these statutes abolished interspousal immunity only in contract and property cases; had the legislature intended to abolish interspousal immunity in tort cases as well, it would have done so explicitly. *Id.* at 393.[3]

*Rubalcava* remained the last word on the subject for seventeen more years; but in

*Stoker v. Stoker*, 616 P.2d 590 (Utah 1980), a still divided Utah Supreme Court reversed field once again. In *Stoker*, another intentional tort claim by a wife against her husband, the court turned to the statutes it had analyzed twice before and this time reaffirmed the interpretation given in the *Taylor* lead opinion. *Id.* at 592. The two dissenters, in an opinion by Justice Crockett, reiterated the *Rubalcava* argument that the legislature had abrogated interspousal immunity only in contract and property cases and had left interspousal tort immunity intact. *Id.* at 593–94. The three members of the majority, however, expressly rejected that analysis. *Id.* at 591. After quoting U.C.A. section 30–2–4, *see supra* note 3, the majority stated:

> The statute authorizes [a wife] to prosecute and defend *all actions* for the preservation and protection of her rights and property, as if unmarried. It speaks of rights and of property in the disjunctive, and, all actions for the preservation and protection of her rights would certainly include a right to be free from an intentional tort of her husband.

*Id.* (emphasis added).

Stating further that the Utah Married Women's Act should be liberally construed so as to promote justice, the majority concluded:

> name and hold the same in her own right, and may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried. There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, or for expenses connected therewith, but the wife may recover against a third person for such injury or wrong as if unmarried, and such recovery shall include expenses ... paid or assumed by husband.

The lead opinion in *Taylor* emphasized the broad assertion in the first sentence of this statute that a wife has a general right to prosecute *all actions* for the protection of her rights. 275 P.2d at 697. The *Rubalcava* majority, however, interpreted the first sentence as limited to actions concerning wages and property. It emphasized instead the reference in the second sentence to the wife's right to recover against *a third person*, concluding that the legislature had only meant to free a wife to pursue a tort claim against a third person and not against her husband. 384 P.2d at 393.

1. Judge Crockett indicated in a footnote that he regarded *Taylor* as distinguishable on the ground stated in his concurring opinion in that case—that the tort there had occurred while a divorce action was pending. He added, however, that he did not expect his "concurring colleagues to join in the expression of this footnote." *Rubalcava*, 384 P.2d at 394 n. 17.

2. An annotation on the subject describes the common law foundation of interspousal immunity as follows: "[I]t was said at common law that husband and wife were one person, and that person was the husband, so that it was both morally and conceptually objectionable to permit a tort suit between two spouses." Wayne F. Foster, Annotation, Modern Status of Interspousal Tort Immunity in Personal Injury and Wrongful Death Actions, 92 A.L.R.3d 901, 906 (1979) [hereinafter Foster, 92 A.L.R.3d].

3. U.C.A. § 30–2–4, discussed in both opinions, provided:

   A wife may receive the wages for her personal labor, maintain an action therefor in her own

To read into our Married Women's Act, a proscription against a wife suing her husband, would be to construe it so strictly as to add a provision which the legislature did not put there.

*Id.*

The Utah Supreme Court has not revisited the issue of interspousal immunity since *Stoker*, though it has had three chances to do so. The question therefore confronts us whether the *Stoker* majority intended to limit its decision to the facts, rejecting interspousal tort immunity for intentional tort claims only, or whether it intended a wholesale rejection, not only in intentional tort claims but in negligence claims as well.

The Utah Supreme Court has twice recognized since *Stoker* that this question remains open. In a 1987 case, the court concluded that a household exclusion clause absolved a liability insurer of the duty to defend a husband in his wife's personal injury suit. *State Farm Mut. Auto. Ins. Co. v. Mastbaum*, 748 P.2d 1042 (Utah 1987). In upholding the validity of the exclusion, the majority opinion chose not to address the issue of interspousal immunity. Justice Zimmerman, in a concurring opinion, explained:

> Inasmuch as there are no grounds for reversing the instant case, I think it unnecessary for us to decide at this juncture whether *Stoker v. Stoker*, 616 P.2d 590 (Utah 1980), abrogated interspousal immunity with respect to actions grounded in negligence as well as those grounded in intentional torts.

*Id.* at 1044–45 (Zimmerman, J., concurring).

A year later, in *Noble v. Noble*, 761 P.2d 1369 (Utah 1988), the court expressly reserved the issue once again. In the parties' divorce proceeding, the trial court found that the husband had intentionally shot his wife. When the wife brought a separate tort suit against the husband, the trial court dismissed her intentional tort claim as precluded by the prior divorce trial and dismissed her negligence claim as barred by interspousal immunity. *Id.* at 1370. The supreme court reinstated the intentional tort claim and held that

the husband was estopped from denying that he had intentionally shot his wife. *Id.* at 1374–75. But the court declined to review dismissal of the negligence claim, explaining:

> In *Stoker*, this Court held that [interspousal immunity] had been abrogated with respect to intentional torts.... *We have never had occasion to decide whether this abrogation extended to negligence claims*, and we do not do so in this case. It is unnecessary for us to reach that question because our disposition of [the wife's] intentional tort action makes it a certainty that she will have a remedy for her injuries.

*Id.* at 1375 n. 7 (emphasis added).

In 1989, the court chose once again to leave the issue unresolved. In *Forsman v. Forsman*, 779 P.2d 218 (Utah 1989), a California couple had an automobile accident while driving through Utah, and the wife brought a negligence claim against her husband in the Utah courts. The trial court dismissed the suit on the ground of interspousal immunity; and the supreme court reversed, applying the law of California, the domiciliary state, without deciding the viability of interspousal immunity in negligence cases under Utah law. *Id.* at 220.

There are two ways to read *Forsman*. One way is to suppose that the court would not have considered the choice of law between California and Utah unless it had concluded that its own law differed from that of California. By this analysis, our dissenting colleague reads into *Forsman* an unarticulated determination that Utah continues to observe interspousal immunity in negligence actions. We think it unlikely, however, that the court would have chosen by silent indirection to resolve a question it had so pointedly declared unresolved in each of the two preceding years in *Noble* and *State Farm*. Rather, because California law had conclusive preference under established choice of law principles, deference to California gave the court a clear path to resolution and freed it a third time from deciding whether *Stoker's* abrogation of interspousal immunity extended to negligence claims.[4]

---

4. The dissent writes: "The Utah court had no reason to consider choice-of-law issues unless a conflict existed between Utah and California law on the immunity issue." We find rather that,

## III. APPLICATION OF *STOKER* RATIONALE

Because the Utah Supreme Court has chosen not to resolve the question "whether *Stoker* ... abrogated interspousal immunity with respect to actions grounded in negligence as well as those grounded in intentional torts," *State Farm*, 748 P.2d at 1044–45, we have two alternative courses in this case. The first course is to try, by examining the reasoning of the Utah cases, to resolve the question Utah has chosen to leave open. The second is simply to accept the law of Utah as unsettled on this issue and fall back on Arizona law. We conclude that the first course is preferable. Where, as here, there is reasoning to guide us in predicting how the domiciliary state would resolve the case before us, we undertake the prediction in keeping with our policy of deference to domiciliary law on questions of interspousal immunity. *Schwartz*, 103 Ariz. at 566, 447 P.2d at 258.

■■■ We have deliberately defined our task as that of *predicting* how the Utah Supreme Court would resolve the case before us. In doing so, we analogize the role of a state court ascertaining and applying the common law of another state to that of a federal court obliged to ascertain and apply state common law. When an issue of state law arises in federal court and there is no controlling decision by the state's highest court, the federal court is obliged to predict what the state's highest court would decide if confronted with the issue. *E.g., Aetna Casualty & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir.1993). Similarly, where, as here, "[t]he highest court of a state ... [has decided] analogous cases in conflicting and inconsistent ways," the court of the forum owes it to the litigants to predict how the state court

would resolve the conflict in the case at hand.[5] Arthur L. Corbin, The Laws of the Several States, 50 Yale L.J. 762, 772 (1941). Professor Corbin put the matter sharply:

> When the rights of a litigant are dependent on the law of a particular state, the court of the forum must do its best (not its worst) to determine what that law is. It must use its judicial brains, not a pair of scissors and a paste pot.

*Id.* at 775.

An example of the approach that Corbin commends is *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.1980). There, the Third Circuit, obliged to apply Ohio law, concluded that a prior Ohio Supreme Court holding, though never expressly overruled, had been so undermined by inconsistent *subsequent reasoning as to warrant* the prediction that the Ohio court would no longer similarly rule. *Id.* at 664–66. The court stated:

> [O]ur prediction "cannot be the product of a mere recitation of previously decided cases." In determining state law, a federal tribunal should be careful to avoid the "danger" of giving "a state court decision a more binding effect than would a court of that state under similar circumstances." Rather, relevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince.

*Id.* at 662 (quoting *Becker v. Interstate Properties*, 569 F.2d 1203, 1205–06 (3d Cir.1977) and 1A James W. Moore et al., Moore's Federal Practice ¶ 0.307, at 3077 (2d ed. 1979)).[6] We similarly approach our predictive obligation in this case.

because California law clearly controlled, the Utah court had no reason to resolve what it had previously defined as an unsettled question of Utah law.

**5.** Utah law is not only unsettled on the question whether interspousal tort immunity has been abrogated in negligence as well as intentional tort cases. This case presents the further question whether Utah would extend interspousal negligence immunity—if it still exists—to *premarital* torts. Utah has never addressed that question; it would present a matter of first impression in that

state. Among the states that have declined as yet to abrogate common law immunity, some have held the doctrine inapplicable to premarital torts. *See generally* Foster, 92 A.L.R.3d at 940–44.

**6.** *Accord Rock Island Improvement Co. v. Helmerich & Payne, Inc.*, 698 F.2d 1075, 1078 (10th Cir.1983) (refusing to follow Oklahoma Supreme Court case decided by split court with strong dissent after predicting that Oklahoma Supreme Court would do likewise given intervening statute undermining policy underlying the decision); *Warner v. Gregory*, 415 F.2d 1345, 1347 (7th

■ Proceeding therefore to the issue, we find that the rationale the *Stoker* court articulated in rejecting the doctrine of interspousal immunity applies equally to negligence cases as to cases of intentional torts. Grounding its decision in a Utah statute that authorized a married woman to prosecute and defend *all actions* for the preservation and protection of her rights and property, the *Stoker* majority wrote, "all actions for the preservation and protection of her rights would certainly include a right to be free from an intentional tort of her husband." *Stoker*, 616 P.2d at 591. Our dissenting colleague may reason from the last part of the quoted sentence that *Stoker* applies only to cases of intentional torts. Yet if we look to *Stoker's* reasoning, as we must, to predict how the court will resolve the undecided question of immunity in negligence cases, we cannot escape the paraphrase that "all actions for the preservation and protection of a married woman's rights" would equally include a right to be free from a husband's *negligent* tort.

Just as our colleague ignores the import of *Stoker's* reasoning on this point, she also ignores that neither the *Rubalcava* opinion nor the *Stoker* opinion attributes any merit to the distinction she finds dispositive between negligence and intentional tort claims. Indeed, the *Rubalcava* majority pointedly rejected such a distinction, stating: "no basis can be found [in our statutes] for *any* distinction between intentional or unintentional torts. Under them the plaintiff either has a right to bring an action in tort, or she does not." *Rubalcava*, 384 P.2d at 392 (emphasis added).

In short, because in *Rubalcava* the Utah Supreme Court decisively rejected any distinction, for purposes of interspousal immunity, between negligent and intentional torts, and because in *Stoker* that court rejected interspousal immunity for reasons that apply equally to negligent and intentional torts, we conclude that the Utah Supreme Court, if squarely presented with this case, would apply the reasoning of *Stoker* and hold that interspousal immunity has been abrogated in Utah in cases of negligent torts.

## IV. EASE IN DETERMINATION AND APPLICATION OF UTAH LAW

Although we have attempted to predict the course that Utah law will take, we acknowledge an element of guesswork in any such prediction. Between 1954 and 1980, the Utah Supreme Court twice reversed its interpretation of the governing statutes on the subject, each time by a divided court; and since 1980 the court has three times avoided deciding how its previous cases should be read. Because a future court might foreseeably choose to reverse field once again, it would be a pretense for either the majority or the dissent to suggest that Utah law on this subject is clear.

Accordingly, we point out that an alternative basis for reversing summary judgment in this case is to fall back on Arizona law. Though the Restatement, as we have indicated, denotes a preference for domiciliary law on issues such as this, it also directs us to consider "ease in the determination and application of the law to be applied." Restatement § 6(2)(g).[7] In this case Arizona law, in contrast to Utah law, is readily determined.

Cir.1969) (refusing to follow Illinois Supreme Court decision after concluding that an Illinois appellate court correctly predicted that the Illinois Supreme Court would do likewise); *Fahs v. Martin*, 224 F.2d 387, 398–99 (5th Cir.1955) (refusing to follow an 1897 Florida Supreme Court decision representing a minority view after predicting that the Florida Supreme Court would do likewise).

7. Although we have not found any cases that offer an in-depth analysis of factor § 6(2)(g), some courts have considered that factor along with others in choosing forum law over that of another state. *E.g., Flotech, Inc. v. E.I. Du Pont de Nemours Co.*, 627 F.Supp. 358, 363 (D.Mass.

1985), *aff'd*, 814 F.2d 775 (1st Cir.1987) (choosing forum law in a product defamation and disparagement suit because it "is easily determinable" and "provides clear precedent directly on point"); *Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1147 (N.D.Tex.1980) (In a personal injury claim arising from a helicopter crash in the jungles of Surinam, with Canada the domicile of the plaintiffs and third-party defendants and Texas the domicile of the defendant and the place where the helicopter was manufactured and serviced, the court chose Texas law rather than Canadian law, explaining that for reasons of familiarity and ready availability of precedent, the law of the forum would be easier to apply.).

Interspousal immunity was unequivocally abolished for public policy reasons in *Fernandez v. Rome*, 132 Ariz. 447, 452, 646 P.2d 878, 883 (1982). Thus, should Utah law be regarded as indeterminate on this subject, we find that Arizona law permits the plaintiff to go forward with this case.

## V. CONCLUSION

For the foregoing reasons, we reverse summary judgment entered for defendant and remand for further proceedings consistent with this opinion.

GRANT, J., concurs.

McGREGOR, Judge, dissenting.

Because I would hold that the trial court correctly applied Utah law to the question of interspousal immunity and that Utah has not abrogated the law of intrafamily immunity in negligence actions between spouses, I respectfully dissent.

The majority recognizes, and I agree, that Utah, as the domiciliary state of the parties to this action, is the state of most significant relationship and that Utah law therefore should govern the rights and liabilities of the parties.[8] Our obligation, as the court in a sister jurisdiction confronting a conflict in laws, is to decide and apply the current state of Utah law. We have neither authority nor reason to develop or extend Utah's law. Rather, we must respect and give effect to the public policy choice made by Utah on the question of interspousal immunity, even though it differs from the public policy choice made by Arizona on that question.

## I.

My analysis of Utah decisions leads me to conclude that, unlike Arizona, Utah recognizes the doctrine of interspousal immunity in negligence actions. Although the majority finds much uncertainty in Utah law, that state has never abolished the doctrine in negligence actions. Furthermore, the Utah Supreme Court, in its most recent decision

related to interspousal immunity,[9] clearly acknowledges that Utah has not changed its position on this issue.

In *Rubalcava v. Gisseman*, 384 P.2d 389 (Utah 1963), the Utah Supreme Court expressly held that interspousal immunity barred tort actions between husband and wife. Seventeen years later, in *Stoker v. Stoker*, 616 P.2d 590 (Utah 1980), the same court held that interspousal immunity did not bar an action for personal injuries resulting from an *intentional tort*. *Stoker* did not, however, abolish interspousal immunity in actions for negligence. Subsequent Utah decisions provide no reason to conclude otherwise. *E.g., Noble v. Noble*, 761 P.2d 1369, 1375 & n. 7 (Utah 1988) (supreme court restored ex-wife's claim of intentional tort; distinguishing question whether *Stoker* abrogates negligence claims); *Forsman v. Forsman*, 779 P.2d 218, 219 (Utah 1989) (in a similar factual setting, the Utah Supreme Court acknowledged the doctrine of interspousal immunity, citing *Rubalcava*, but applied California law to litigants domiciled in California). Until Utah abolishes the doctrine, general principles of jurisprudence lead me to the conclusion that the doctrine remains in effect.

I believe the Utah court's decision in *Forsman*, the most recent Utah decision to speak to the issue of interspousal immunity, critically undermines the majority's conclusion that current Utah law has abolished interspousal immunity in negligence actions. In *Forsman*, the Utah Supreme Court reviewed a trial court's order granting summary judgment against a plaintiff domiciled in California. The trial court, addressing the precise question of Utah law at issue here, held that the plaintiff's negligence "action against her husband was barred by the doctrine of interspousal immunity...." 779 P.2d at 218. On review, the supreme court did not find the trial court erred in applying the doctrine of interspousal immunity to a negligence action. Rather, the court concluded that "Utah law should not be applied" to determine the issue

---

8. The majority does reserve an alternative basis, which I discuss below, for its decision to overturn the trial court's judgment.

9. *Forsman v. Forsman*, 779 P.2d 218 (Utah 1989).

of interspousal immunity. In reaching that decision, the court first referred specifically to *Rubalcava*, which upheld the doctrine of interspousal immunity. The court then noted that California, the state of the parties' domicile, had abrogated interspousal immunity. *Id.* at 219. Having established that distinction in law, the court undertook a detailed analysis of the very conflicts-of-law provisions of the Restatement that the majority regards as central to defining our approach in this action. After considering the Restatement and the law of several other jurisdictions, including Arizona, the Utah court adopted the Restatement rule for choice of law. Accordingly, the court reversed and remanded, instructing the trial court "to apply the law of the domicile on the issue of interspousal immunity." *Id.* at 220.

The majority would negate the impact of *Forsman* by finding two ways to read that decision. The first interpretation, which I find more likely but which the majority rejects, is "to suppose that the [Utah Supreme Court] would not have considered the choice of law between California and Utah unless it had concluded that its own law differed from that of California." Maj. op. at 317, 884 P.2d at 203. By rejecting that interpretation, the majority fails to apply established choice-of-law principles. When an action raises a potential conflict of law, the first question a court must address is "whether there is a true conflict between the laws of the two jurisdictions on the issue presented by the litigation." *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1506 (9th Cir.1993). No true conflict exists unless "the laws of the two jurisdictions differ and both states have a legitimate interest in having their law apply." *Id.*, quoting *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987). If no conflict exists on the controlling issue, the court need not address the choice-of-law issue. Utah applied that approach in *St. Paul Fire and Marine Ins. v. Commercial Union Assurance*, 606 P.2d 1206 (1980). In that case, the appellant argued that Wyoming law, rather than Utah law, should apply to questions of contract interpretation. The court rejected the invitation to consider Wyoming law, finding "no

conflict of laws issue which necessitates a decision on choice of law." *Id.* at 1208, n. 1.

The same analysis applies to the decision in *Forsman*. The Utah court had no reason to consider choice-of-law issues unless a conflict existed between Utah and California law on the immunity issue. The court had no reason to direct the trial court to consider the issue under California law on remand unless doing so could produce a different result from that caused by applying Utah law. Contrary to the suggestion of the majority, the court gives no indication whatever that Utah law is unsettled; it simply defers to California in an area in which its law conflicts with that of Utah.

Unlike the majority, I do not believe *Stoker*, on which the court relies heavily, can be interpreted as a sweeping abrogation of interspousal immunity in all instances. In *Stoker*, the court referred to Wayne F. Foster, Annotation, Modern Status of Interspousal Tort Immunity in Personal Injury and Wrongful Death Actions, 92 A.L.R.3d 901, 923 *et seq.* (1979), which discusses abrogation of and exceptions to immunity. *See Stoker*, 616 P.2d at 592. Significantly, the cited section includes a lengthy explanation about exceptions for *intentional torts*, the issue specifically addressed in *Stoker*. Foster, 92 A.L.R.3d at 926–27. Further, the *Stoker* court expressly reaffirmed *Taylor v. Patten*, 2 Utah 2d 404, 275 P.2d 696 (1954), which permitted actions between spouses for *intentional* torts occurring during the interlocutory period of a divorce action while the spouses were living apart. *Stoker*, 616 P.2d at 592. These statements suggest that the *Stoker* court intended to do exactly what its opinion says: limit the abrogation of interspousal immunity to intentional tort actions.

I must conclude that had the Utah court wished to join those states that have abolished interspousal immunity for negligence actions, it could have done so in *Stoker*, in *Noble*, or in *Forsman*. The combination of the *Stoker* court's emphasis on permitting intentional tort actions, the *Noble* court's distinction between immunity for negligent acts and immunity for intentional acts, and the recognition in *Forsman* that Utah's law con-

flicts with that of states that have abolished interspousal tort immunity convinces me that Utah has chosen not to join the vast majority of jurisdictions that have abolished interspousal immunity in negligence actions.

## II.

As an alternative basis for its decision, the majority concludes that, because an "element of guesswork" inheres in predicting the future course of Utah law, we can reverse summary judgment by falling back on Arizona law. Again, I respectfully dissent.

In the often murky universe of choice-of-law questions, few principles are as firmly established as that which applies to this action. The clear view of the Restatement (Second) of Conflict of Laws and of Arizona law is that the state of the parties' domicile has the most significant interest in determining questions of intrafamily immunity, and the law of the domiciliary state controls, absent unusual circumstances not present here.

The Restatement repeatedly recognizes the overarching interest of the domiciliary state in deciding intrafamily immunity issues. Section 6(2) of the Restatement defines basic choice-of-law principles. Comment *f* to that section states: "[T]he state of the spouses' domicile is the state of dominant interest when it comes to the question whether the husband should be held immune from tort liability to his wife (see § 169)." Comment *d* to section 145, which instructs as to the principles applicable to selecting the state with the most significant relationship to the rights of parties with respect to issues in tort, states in relevant part:

> Experience and analysis have shown that certain issues that recur in tort cases are most significantly related to states with which they have particular connections or contacts....
>
> [T]he local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability.... An example is the issue of intra-family immuni-

ty, which, as stated in § 169, is usually determined by the local law of the state of the spouses' common domicil.

Section 169, which specifically governs intrafamily immunity, similarly provides: "The applicable law [to determine whether one member of a family is immune from tort liability to another member of the family] will usually be the local law of the state of the parties' domicile." Comment *b* supplies further emphasis: "Whatever the true explanation, the state of the parties' domicil will almost always be the state of dominant interest, and, if so, its local law should be applied to determine whether there is immunity in the particular case."

If additional authority were required for the principle that we should apply the law of the domiciliary state to decide this issue of immunity, the Arizona Supreme Court supplied that authority in *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968). There the court considered whether to apply the law of Arizona or that of New York to determine a question of interspousal tort immunity. The "significant contacts" of the states were precisely as they appear here: Arizona was the place of injury and place of conduct and New York was the parties' domicile and the place at which the parties' relationship was centered. The court held without difficulty that New York's law controlled: "With domicile to be given the greatest weight, the determination as to which state has the most significant contacts with the issue of interspousal tort suits becomes evident. New York law ... should be applied." *Id.* at 566, 447 P.2d at 258.

The majority recognizes that Utah is the state of "most significant relationship" and that the domiciliary state's law generally determines the disposition of intrafamily tort actions. It finds an alternative basis for its decision to reverse the trial court's summary judgment, however, in the seldom-used "ease in determination" general factor set out in Restatement 6(2)(g) and two cases in which the factor receives mention, as one factor of many.[10]

---

10. Section 6(2)(g) identifies the "ease in the determination and application of the law to be applied" as the final factors relevant to the choice of applicable law.

I believe the majority's reliance upon Restatement 6(2)(g) is misplaced for a number of reasons. First, I am aware of no instance, and neither the parties nor the majority provides any, in which a court relied upon section 6(2)(g) to overcome a principle as strongly established as that applying domiciliary law to issues of intrafamily immunity. Indeed, read in the context of all the factors recited by Restatement 6(2), section 6(2)(g) appears to be the least important. In contrast to the lengthy comments explaining the other factors, the Restatement states simply:

> Ideally, choice-of-law rules should be simple and easy to apply. This policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results. The policy does, however, provide a goal for which to strive.

Restatement § 6 cmt. *j.* Given the Restatement's emphasis on determining the state having the most significant relationship to the litigants and the strong presumption for applying the law of the state of domicile, the majority should not "overemphasize" section 6(2)(g) as the sole factor directing this court to apply Arizona law to this case.

Moreover, neither of the two cases cited by the majority in support of its decision to apply Arizona law involves a choice-of-law analysis similar in fact or law to that presented here. In both cases, the court considered section 6(2)(g) in cases in which other choice-of-laws factors were relatively even.

In *Flotech, Inc. v. E.I. Du Pont de Nemours Co.*, 627 F.Supp. 358 (D.Mass.1985), *aff'd*, 814 F.2d 775 (1st Cir.1987), the two plaintiffs, one with its principal place of business in Massachusetts and the other in New Jersey, filed a diversity action in Massachusetts federal court suing Du Pont, a Delaware corporation. The *Flotech* court recognized that each state had an interest in the matter. Although the court found that Massachusetts law provided easily determinable and clear legal precedent for the plaintiffs' product defamation action, it based its decision to apply the forum law equally on the section 6(2) factors of certainty, predictability, and uniformity of result and on the basic policies of tort law. The court also noted

that the needs of the interstate system pointed to no particular state and found that "[o]n balance, there is no compelling reason *not* to apply Massachusetts law." *Id.* at 363.

The *Flotech* court's rationale does not apply here because this case does not present the same even balance of factors for section 6 analysis. *Flotech* simply did not involve a situation in which any clear preference existed for applying one state's law. In further contrast, in this case the basic policy of interspousal tort law and the needs of the interstate system point directly to application of the law of Utah as the state of domicile rather than Arizona, the forum state. Given the strong preference for applying the law of the state of domicile, I see a compelling reason *not* to apply Arizona law in this case.

The factual and legal concerns in *Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129 (N.D.Tex.1980) are equally distinct from those in this case. *Baird*, an action filed in Texas, presented a choice-of-laws question involving Canada, the domicile of the plaintiffs/third party defendants, and Texas, the domicile of the defendant and the site of manufacture of the helicopter involved in a crash from which this products liability claim arose. The court analyzed the relative interests of Texas and Canada by applying the factors listed in Restatement 6(2). It concluded that Texas law would apply to the products liability claim due to the significant policy interests advanced by applying the law of the forum state, Texas, and the absence of similar policy concerns under Canadian law. *Id.* at 1140–1141. The court also found that the ease in determining and applying Texas law in a Texas court, as opposed to the law of a foreign legal system, Canada, supported application of the forum law. *Id.* at 1141.

In obvious contrast, the intrafamily policy interests involved in this case strongly favor Utah law over Arizona law. The majority recognizes that Arizona has relatively minor competing policy concerns and even concedes that these interests would not normally supersede the preference for domiciliary law in intrafamily immunity issues. Additionally, the concerns for ease of determination and application in *Baird* derive primarily from that court's conclusion that British Colum-

**324**

bia's policy concerns would be better served by applying Texas law. *Id.* In contrast, Utah's policy concerns related to interspousal immunity would be undermined by applying Arizona law to permit litigation to continue. I believe the majority has extended section 6(2)(g) far beyond its intended bounds.

## III.

I agree with the majority that Utah has not explicitly determined whether the doctrine of interspousal immunity applies to premarital torts. We must defer, however, to the determination of the Utah Supreme Court that interspousal immunity furthers the public policies of promoting marital harmony and eliminating the "temptation to collusion." *Rubalcava,* 384 P.2d at 391–92. Utah courts have never disclaimed this public policy rationale, and those reasons apply with equal force to actions between spouses involving conduct that occurred prior to the marriage. That conclusion is consistent with the approach taken by the Delaware Supreme Court in another of the minority of jurisdictions that has not abolished interspousal tort immunity. The Delaware court noted that in determining the point in a relationship the doctrine of interspousal tort immunity applies, the courts must look to the marital status of the parties at the time their rights are judicially determined, not at the time of the injury or at the time the action was filed. *Hudson v. Hudson,* 532 A.2d 620, 624 (Del.1987) (specifically holding that the spouses' subsequent divorce "remove[d] the bar against spousal immunity" to interspousal litigation); *see also Taylor,* 275 P.2d at 700 (Crockett, J., concurring) (acknowledging that the policy factors supporting interspousal immunity essentially do not exist after the couple has filed for divorce). Significantly, the *Hudson* court acknowledged the same policy concerns of avoiding fraud and collusion and maintaining family peace and harmony as motivate the Utah courts. *Hudson,* 532 A.2d at 622.

Because the parties in this case are currently married, applying the doctrine of immunity furthers Utah's expressed interest in protecting marital harmony and preventing fraud and collusion, despite the premarital nature of Mrs. Lucero's injury. Under these facts, I conclude that the doctrine of interspousal immunity applies to preclude a negligence action based on a premarital tort.

## IV.

For the foregoing reasons, I would affirm the trial court's grant of summary judgment.